ROSWELL PIERCE *v.* FREDERICK W. HOFFMAN AND SAMUEL W. FISHER.

*Fraud.    Evidence of other fraudulent dealings when admissible.*

In an action of trespass for property, which the defendant claimed was fraudulently purchased by the plaintiff, it was held, that testimony of other fraudulent dealings between the parties about the same time of the one in question, is admissible, and should go to the jury.

TRESPASS for a wagon.    Plea, the general issue, and notice that defendants would prove, that defendant Hoffman was a creditor of one Joel Butterfield, that said wagon was attached and sold as the property of said Butterfield, defendant Fisher acting as officer. Trial by jury.    On trial, the plaintiff gave evidence tending to

prove, that he purchased the wagon of said Butterfield, about the first of June, A. D. 1850, before the same was finished, for the price of forty dollars, and executed his note to said Butterfield for that amount; that plaintiff bought and paid for iron axletrees for the same, and that a day or two before the wagon was attached by defendants, that plaintiff took possession of the same, also that plaintiff had paid the note he gave said Butterfield for the wagon.

The defendants gave evidence tending to prove, that said Butterfield was insolvent, and in failing circumstances, at the time of the sale of said wagon to plaintiff, and that the sale was fictitious and colorable, and made for the purpose of avoiding the payment of debts by said Butterfield; that plaintiff was privy to such intent, and that Butterfield, a few days after the attachment of the wagon, absconded to Canada; also, that said Butterfield had a horse in his possession, which belonged to him, but the plaintiff fraudulently claimed to own the same, to prevent the same from being attached by the creditors of said Butterfield, and that said horse was taken to Canada by said Butterfield.

Also evidence tending to prove, that a short time before the wagon was attached by defendants, the plaintiff brought an action against said Butterfield, and trusteed one Bemiss, and that said suit was fictitious and fraudulent, and brought for the purpose of preventing the creditors of said Butterfield, from attaching the debt against Bemiss.

The plaintiff objected to the admission of this testimony, but the court overruled the objection, to which the plaintiff excepted. The defendants also introduced copies of the attachment and proceedings against said Butterfield, upon which said wagon was sold.

The charge of the court to the jury was not objected to, except so far as it related to the evidence of other fraudulent dealings between plaintiff and said Butterfield. Upon this part of the case, the court charged the jury, that if they found that about the same time of the transfer of the wagon by Butterfield to the plaintiff, the plaintiff was fraudulently concealing other property of said Butterfield, to keep the same out of the reach of attachment by his creditors, they should consider this as evidence tending to show what was the intent of the parties in the transaction in question, but that before any unlawful intent was inferred from other dealings between the parties, the evidence ought to be clear that these

other dealings and transactions were in fact fraudulent. And if the sale of the wagon was upon good consideration, and *bona fide*, the same could not be avoided, because the parties had been engaged in other transactions which were fraudulent.

The jury returned a verdict for the defendants; the plaintiff excepted to so much of the charge of the court, as is above detailed.

*H. S. Bartlett* and *E. A. Cahoon* for plaintiff.

Insisted that the first and well established rule, governing in the production of evidence, is that the "evidence offered must correspond with the allegations, and be confined to the point in issue." That this excludes collateral facts, for the reason that such evidence multiplies issues, hence tends to mislead jurors, surprise the adverse party, embarrass litigation, try not what is set down for trial, but something else. 1 Greenleaf's Ev. 120−1−2.

And also insisted that the sale of the wagon must be proved to be fraudulent, in and of itself, by direct evidence, before the *intent* or knowledge of plaintiff can be inquired into by reference to foreign or extraneous transactions.

*A. J. Willard* and *Davis & Dana* for defendants.

Insisted, that to invalidate the sale of the wagon, it was necessary to show fraudulent *intent* in Butterfield, and knowledge of such *intent* in plaintiff. *Edgell* v. *Lowell*, 4 Vt. 405. *Bridge* v. *Eggleston*, 14 Mass. 250. *Bridge* v. *Hall*, 12 Pick. 89.

That this *intent* and *knowledge* may be proved by circumstances; and also cited *Burbank* v. *Cary*, 11 Wend. 83. 2 Wash. Dig. 548 § 26.

BY THE COURT. The only question in the present case is, whether the testimony of other fraudulent dealings between the parties about the same time of the one in question, was properly admissible in the case. The general rule of evidence will undoubtedly exclude other independent transactions. But in a question of intention, like the present, such evidence is admitted, even in criminal cases of the gravest importance.

It is usually the only mode of proving such matters. Púrpose and intention, especially when there is an obvious motive for disguise, is only to be reached by inference, and safe inference can

almost now be made from a single transaction, especially when the form of the act is in itself indifferent and of hourly occurrence. This kind of evidence is always resorted to for the purpose of establishing the fact of guilty knowledge, in uttering forged paper or coin, and is carried much farther in our practice than in England. But where any considerable doubt rests upon the cotemporaneous transactions, they weigh nothing, and so the jury were told in this case.

But in cases of this kind there is a probable connection in a series of sales, nearly at the same time, the result of which, is to strip a man of his available property and enable him to leave the country. It would be impossible, generally, to show the object and intention of the parties, without allowing everything to come into the case, which might fairly be supposed to have a connection with the general design to be ultimately accomplished. A fraudulent transaction between the same parties, which had no connection with the particular failure, might not be competent evidence. But all which regarded the very failure and absconding, and it would seem the testimony objected to had such connection, should go before the jury. If this were not so, it would be in the power of parties, by subdividing such transactions, to altogether destroy the force of the evidence resulting from their general character.

The charge of the court upon this point seems to have been unexceptionable.

Judgment affirmed.