## EASTMAN *v.* PREMO.*

### *Evidence.   Fraud.*

In trover for a horse alleged to have been purchased by defendant with the fraudulent intent of getting possession of it without paying therefor, plaintiff offered evidence that defendant was engaged in contemporaneous fraudulent transactions of like kind.  *Held*, admissible for the purpose of showing defendant's intent.

TROVER for a horse.   The case was referred, and the referees reported the following facts :

The plaintiff, in his own behalf, testified that defendant came to his house and proposed to buy of him a certain four-year-old horse, and desired plaintiff to fix a price that he would take therefor, and wait on him five months for payment, informing plaintiff that he had sold his own horse on five months time, and that he wanted plaintiff's colt to keep and break for his own use, and that he had no ready money to pay down for said horse, but would pay for him when he got the money due him for the horse that he had sold ; that after some bantering, plaintiff offered to take $140 for the colt, and to take defendant's note, payable on the time required, if defendant would get a good signer on the note ; that the defendant accepted the offer, and said that he would get his brother, Levi Premo, to sign the note with him, if that would be satisfactory to plaintiff ; that plaintiff told defendant that he

*Decided at the January Term, 1876.

would take his brother as a signer on the note, and that the trade was concluded on those terms, defendant agreeing to come the next day and bring his brother with him, and execute the note as agreed, and take the colt away; that defendant came the next morning, and informed plaintiff that he had seen his brother, and that he would be at plaintiff's house in the afternoon of that day, and that they would then execute the note; that defendant requested plaintiff to permit him to take the colt home with him then, as he wished to harness him and commence to break him, saying that the note should be executed as agreed; and that plaintiff let defendant take the colt upon those conditions.

The plaintiff further testified that after some three days, the defendant again came to plaintiff's house with one Vallery Jerry, and desired plaintiff to write a note, saying that he would take it and get his brother to sign it as agreed; that he went away, and came back with a stamp for the note, and said he would sign the note himself, and desired plaintiff to put on the stamp, and said his brother would be at plaintiff's house the next day to sign the note; that he waited a few days, but neither defendant nor his brother came, and that he then made inquiries, and learned that defendant, in company with said Jerry, had gone to market with a lot of horses; that he then waited till defendant returned, and went to see him, and went with him to see his brother, Levi Premo, who then refused to sign the note; that soon after defendant returned from market, all of his property was attached by his relatives and friends, upon writs now pending, and that after the refusal of Levi Premo to sign the note, plaintiff tendered back to defendant the note left with plaintiff as above stated, and upon his refusal to take it, left it with him, and demanded a return of the colt.  Plaintiff also offered testimony that was not denied, showing that soon after the colt came into the possession of defendant, defendant traded it for a horse that went into the lot of horses that defendant and Jerry took to market.  Plaintiff then offered testimony showing that defendant was engaged in other transactions in horses contemporaneous with the one involved in this suit, which were fraudulent, for the purpose of sustaining his claim that defendant had the fraudulent intent of getting possession of his horse without paying for him.  To the introduction of this testimony defendant objected.  The objection was overruled and the testimony received, subject to defendant's objection.  The testimony produced tended to show that defendant and Jerry purchased in Rutland and other towns in the vicinity, a carload of horses of different persons, all upon time or by way of exchange, in all cases representing to the persons of whom they purchased

that the horses were for their own use at home — not in any case disclosing the fact that they were to be taken to market; that they took the horses thus purchased to market and disposed of them; that Jerry made sale of all of his property in the vicinity, and after selling the horses fled to Canada, and had not returned, and that before the maturity of any of the notes given for the horses, all of defendant's property was attached upon suits in favor of his relations and friends, who claimed indebtedness against him sufficiently large to consume all of his property; and that none of the notes given by defendant and Jerry for the said horses had been paid.

Defendant denied that he offered to get a signer upon the note left with plaintiff, and introduced evidence tending to show that the purchase of plaintiff was upon his own credit, and that the horse was delivered to him by plaintiff upon such purchase; and, also, that the other purchases of horses by him with Jerry, were in good faith, and with no fraudulent intent on his part.

The referees found that by the terms of the agreement between plaintiff and defendant, the title to the horse in question was not to pass until defendant and his brother had executed a note for the agreed price, and delivered the same to plaintiff; that plaintiff did not part with his ownership in the horse when he permitted defendant to take him away, nor accept the note of defendant left with him, as above stated, in lieu of the indorsed note agreed to be furnished; and that soon after defendant obtained possession of the horse, without permission or knowledge of plaintiff, he exchanged him for another horse, and shipped the horse thus obtained, with the lot of horses taken by him and Jerry, to market; and, that before bringing suit, plaintiff tendered defendant's note back to him, and upon his refusal to accept it, left it with him, and demanded a return of the horse; that the purchase of the horses by defendant and Jerry was fraudulent; that they purchased them with the intention of not paying for them; that the attempted purchase of plaintiff's horse was a part of the same transaction, and was entered into by defendant with the same intention; and that the value of the horse in question, at the time it came into the possession of defendant was $140, and that the interest on that sum from February 15, 1871, to September 14, 1875, was $38.50, making the sum of $178.50, which plaintiff was entitled to recover.

Defendant excepted to the report, on the ground that the referees received evidence tending to show contemporaneous fraudulent transactions between defendant and other parties. But the

court, at the September Term, 1875, WHEELER, J., presiding, rendered judgment for the plaintiff; to which defendant excepted.

*A. A. Nicholson,* for defendant.

The testimony introduced before the referees, tending to show contemporaneous fraudulent transactions between the defendant and third persons, was inadmissible, and should have been rejected. Those transactions had no connection whatever with the transaction complained of, and did not in the slightest degree affect the plaintiff's conduct. Mere reputation of a person's general character, or of his specific acts in connection with particular transactions similar in their nature to those complained of, cannot, except in special cases where he attempts to justify and stand upon his good name, be weighed in support of an accusation against him. He may have the reputation of a thief, and this reputation may unfortunately have gained consistency and credence by acts bearing suspiciously against him, but in an action against him to recover the value of stolen property, an offer to prove that he had stolen goods of a like description of other parties, would be wholly inadmissible. If admitted, it would have the effect to deeply prejudice his case in the judgment of his triers; and this is one of the very evils that the humane policy of the law is pledged to guard against

But it is said that the referees find sufficient additional facts to justify their final action. But this we insist cannot be accepted as a reason why their report should be sustained, for the reason that the consideration of this objectionable evidence inspired and gave tone to their conclusions upon every other issue involved in the case. If there be error in the proceedings of the court below, the party excepting is entitled to a new trial as a matter of right, although substantial justice may have been done. *Bebee* v. *Steele,* 2 Vt. 314; *Penniman* v. *Patchin,* 5 Vt. 346; *Middlebury* v. *Case,* 6 Vt. 165; *Way* v. *Wakefield,* 7 Vt. 223; *Irish* v. *Cloyes & Morse,* 8 Vt. 30; *Blake & Goodhue* v. *Tucker,* 12 Vt. 39; *Fullam* v. *Cummings,* 16 Vt. 697.

Eastman *v.* Premo.

*W. H. Smith* for plaintiff.

The plaintiff is entitled to judgment upon the facts found by the referees, without regard to the specific ground of defendant's exception.

The defendant obtained possession of the horse without a purchase. He took it upon conditions which were never fulfilled, and refused to return it upon demand. Judgments are not to be disturbed for the intervention of errors which do not injure the defeated party nor affect the real grounds upon which they rest.

But there was no error in the admission of the testimony showing contemporaneous transactions of the defendant, for the purpose of proving his fraudulent intent in the purchase of the plaintiff's horse. A fraudulent purchase can rarely be shown from a single transaction. Others that also occur in the prosecution of the business in hand, give character to the whole and each. *Hennequin* v. *Taylor*, 24 N. Y. 139 ; *Bradley* v. *Obear*, 10 N. H. 291, 477 ; *Pierce* v. *Hoffman*, 24 Vt. 525.

The opinion of the court was delivered by

POWERS, J. The questions discussed in this case arise upon exceptions to the referees' report. On the trial, the parties were at issue as to the terms of the contract of sale that the defendant set up. The plaintiff insisted that the contract of sale was to have effect as such, only upon the delivery to him of defendant's note with surety. The defendant claimed that the delivery of his sole note completed the trade. The referees found this issue as claimed by the plaintiff, and that, inasmuch as the defendant failed to deliver the note with surety, no property in the horse passed to him. The conversion of the horse is sufficiently made out then, without any reference to the evidence objected to by the defendant.

The plaintiff, on the trial, offered testimony to show that the defendant was engaged in other transactions in horses cotemporaneous with this, which were fraudulent, for the purpose of sustaining the plaintiff's claim that the defendant purchased the plaintiff's horse with the fraudulent intent of getting possession thereof and not paying for him. This evidence was received, and

the question of its admissibility is raised by the defendant. It is not allowable to show the making of other cotemporaneous contracts, as evidence of the making of the particular contract in question, and the evidence was not offered for this purpose. The plaintiff's offer was, in substance, "if the contract as claimed by the defendant is found by the triers, then I propose to prove it void by reason of the defendant's fraud in procuring it"—that the defendant's intent was, to swindle the plaintiff. For the purpose of showing the defendant's intent, we think the evidence admissible. Upon this view of the alleged purchase, the defendant's fraudulent intent is a material fact to be made out; and in such case, collateral transactions may be shown to establish such intent. 1 Greenl. Ev. s. 53. This doctrine is sanctioned by the Supreme Court of the United States. *Castle* v. *Bullard*, 23 How. 172 (3 Miller, 494). Mr. Justice CLIFFORD, in that case, uses the following language in reference to the evidence offered, which was of the same import and for the same purpose as in the case at bar: "Similar fraudulent acts are admissible in cases of this description, if committed at or about the same time, and when the same motive may reasonably be supposed to exist, with a view to establish the intent of the defendant in respect to the matters charged against him in the declaration." *Irving* v. *Motley*, 7 Bingh. 543, is a case also in point. The case of *Pierce* v. *Hoffman & Fisher*, 24 Vt. 525, is in harmony with the doctrine in Greenleaf and the cases above cited.

The evidence in this case on this point very clearly established a general purpose on the part of the defendant and his " pal," to swindle any and all parties that they could reach ; and their method of operations seems to have been in other cases the same as that adopted with the plaintiff, namely, to get up the semblance of a contract as the guise under which to practice their fraud. Such rascals always lament with " long faces" and " holy horror" any deviation from well-settled rules of the law of evidence that tends to bring them to their just deserts ; but we are happy to believe in this case, that no such deviation is necessary to accomplish substantial justice.

Judgment affirmed.