# DYER V. TAYLOR.

1. FRAUDULENT SALE : *Evidence showing intent of vendor.*

A merchant, largely in debt and pressed by the demands of his creditors, sold his stock of goods to his brother-in-law, a person of small means and in debt. Circumstances immediately connected with the transaction, tended to show that it was a fraud upon the vendor's creditors who, soon after the sale was made, sued out orders of attachment under which the defendant as sheriff seized the goods, and the vendee brought an action against him to recover them. The defendant in support of his contention that the sale was fraudulent, offered evidence to show that about the time it was made the vendor took notes in his wife's name in the settlement of accounts, that his books were mutilated, that dates were altered, and that balances on the books were changed. This evidence was objected to by the plaintiff, on the ground that he had no connection with the acts to which it related. *Held:* That the evidence was admissible, as it tended to prove transactions indicating a general purpose of fraud, and thus to show the motive which actuated the vendor in making the sale.

2. SAME : *Notice to purchaser.*

To avoid the sale of goods for a valuable consideration, actual notice to the purchaser of a fraudulent intent on the part of the vendor, is not necessary. The vendee will be charged with such notice if he buys without inquiry, with a knowledge of facts sufficient to put a man of common sagacity upon inquiry and to lead him, with the use of reasonable diligence, to a discovery of the vendor's fraudulent purpose.

3. SAME : Proof of fraud : *Practice: Failure of jury to agree on special findings.*

In an action brought by the vendee of goods alleged to have been sold to defraud the vendor's creditors, and seized by the defendant as sheriff under attachments sued out by the creditors, the court at the plaintiff's request submitted to the jury questions as to whether the sale was for a fair value, and whether the proceeds thereof were used towards the payment of the vendor's debts. The jury stated that they were unable to agree on answers to these questions, but returned a general verdict for the defendant and were discharged. *Held:* That the discharge of the jury was not equivalent to a mistrial, as affirmative answers to such questions would not have been inconsistent with the general verdict.

APPEAL from *Crawford* Circuit Court.

R. B. RUTHERFORD, Circuit Judge.

*Duval & Cravens* for appellant.

1. To render a sale of goods void as to creditors and vendees, it must appear that not only the intent to defraud his creditors existed in the mind of the vendor, but said intent was known to and participated in by the vendee, thus aiding

Dyer v. Taylor.

the vendor to defraud his creditors. 9 *Ark.*, 482; 23 *Id.*, 258; 30 *Ark.*, 417; 31 *Id.*, 554; 32 *Id.*, 255. The fraudulent intent must exist at the time of the sale. No subsequent illegal acts either in omission or commission can in any manner invalidate it. 39 *N. Y.*, 200; 85 *N. Y.*, 466. Evidence as to Patton's taking notes in his wife's name, false entries on his books, mutilating the books, etc,, all occurring after the sale, were inadmissible against Dyer, he having no connection with them.

2. Fraud must be proved, and the onus was on defendant to show it by preponderating testimony. 40 *Ark.*, 418; 1 *Story Eq.*, sec. 190. The money received by appellant was applied to the payment of his debts. The transfer of the notes to his brother was a mere preference of creditors, which a debtor may do.

3. The jury should have been required to answer the questions of plaintiff. An affirmative answer to them would have entitled plaintiff to a verdict, and discharging the jury without answering these questions was equivalent to a mistrial.

*U. M. & G. B. Rose* and *Clendening & Read* for appellee.

1. The evidence in this case shows an ordinary case of ordinary fraud, and very similar to 45 *Ark.*, 520; 11 *Fed. Rep.*, 559; 20 *Fed. Rep.*, 287. In the two last mentioned cases the purchaser actually paid cash, while in this case, Dyer only gave a draft against the proceeds of Patton's own cotton. The leading case on this subject is 6 *Wall*, 299 where it was held that by giving intangible securities which could be easily placed beyond the reach of creditors, the purchaser had afforded facilities for the perpetration of a fraud, and the conveyance was set aside.

Dyer v. Taylor.

2. There was no error in accepting a general verdict without requiring the jury to answer the questions propounded, upon which the jury could not agree. *Mansf. Dig., sec.* 5142, is plainly permissive and not mandatory. 36 *Ark.,* 371 ; 119 *Mass.,* 273. It rests with the jury whether they will render a special verdict or not, and if they refuse to do so, the court must still receive the general verdict. 3 *Salk.,* 373 ; 3 *Black. Com. Ch.,* 23 ; *Cooley Const. Lim.,* 321 ; *Bouvier Law Dict., Title " Verdict."*

3. Evidence of frauds committed by Patton, with which Dyer is not shown to have been immediately connected, were admissible to prove, 1st, that Patton did commit a fraud, and 2d, that Dyer participated in it. Everything throwing light on Patton's motives and intent was admissible. *Bigelow on Fraud, p.* 476 ; *Ib., p.* 478 ; 24 *Ark.,* 222 ; 31 *Id.,* 666.

4. If Patton intended to defraud his creditors, and Dyer had notice of it, or knew such facts as should put him upon inquiry, the sale was void. 101 *U. S.,* 141 ; *Bump, Fr. Conv,* (3rd Ed.) *p.* 201 ; *Wade on Notice, sec.* 11 ; 1 *Story Eq. Jur,, sec.* 400 ; *Bigelow on Fraud, p.* 291 ; 35 *Ark.,* 100.

BATTLE, J. Taylor being sheriff of Crawford county, seized a stock of goods under and by authority of several orders of attachment sued out by the creditors of J. N. Patton. Dyer, claiming to have purchased the goods of Patton, brought this action against Taylor to recover possession of them. The sale to Dyer was made about ten days before the seizure by the sheriff. Taylor contends that the sale was fraudulent and void as to Patton's creditors

The evidence introduced in the trial tended to prove the following facts: Patton was the owner of a stock of goods ; was a merchant, and did business in Alma, in this state ; Dyer was his brother-in-law ; had been his clerk ; was inti-

ι ɔate with him and familiar with his business.  In the fall
oɪ 1885, Dyer was doing "a two hundred dollar business"
nɛ ar Alma, and had no property subject to execution and
was in debt.  Patton owed about $9000, and his creditors
were urgent and pressing in their demands.  The books of
Patton showed that, after giving Dyer credit for his services
as clerk, Dyer was indebted to him in the sum of four
dollars and thirty cents.  Notwithstanding this fact
Patton turned over to him ten bales of cotton, under the
pretense of paying him for his services as clerk, and received
from him $100 or $150 in money.  Dyer did not weigh the
cotton, and did not know, he says, what Patton owed him,
and was dependent on Patton's books for information as to
the accounts between him and Patton.  About this time,
Patton sold to him his stock of goods for $3500.  They say
that Dyer paid $300 in money and gave draft on the proceeds
of the cotton for $500, which was paid, and executed his
three notes for $900 each, payable in thirty, sixty and ninety
days, for the balance of the purchase money.  Dyer said he
had no means of paying the notes, but expected to sell the
goods, and pay them with the proceeds of the sale.
A day or two before this, Patton proposed to a man named
Baker to sell him the same goods, but before Baker had time
to decide what he would do, being pressed by his creditors,
sold to Dyer, and a day or two afterwards, told Baker he
could get the goods.  Soon after, or about the time of this
sale, he took notes to his wife in settlement of accounts due
him on his books, saying he was indebted to her; sold cotton
and took a draft for the purchase money in the name of
Dyer, and afterwards endorsed it with Dyer's name, and
collected it himself.

The sale of the goods to Dyer was on the 4th of November, 1885, and the goods were seized by the sheriff on the
13th of the same month.  When the goods were attached, no

books were found in the store containing the goods, but Patton, in response to a rule upon him to produce his books, said he had left them there. Finally, in response to a second rule, he produced his ledger. It was much mutilated, a part of the leaves were torn out, and the tops of the others were so cut or gnawed that it was impossible to tell against whom the accounts on them stood. He said he had found it under the store-house, and he supposed rats had eaten it. But between the time of the attachment and the time when he said he found it, entries in his hand-writing were made in it, for which he could not account. Dates had been altered and entries changed. The books produced showed accounts amounting to $6,845, and that he had collected on them after the 1st of September, 1885, $5,111. After the attachment he transferred Dyer's notes to his brother. In an attempt to explain his conduct, he says he had given to Hill, Fontaine & Co., his note for $2100 or $2200, and his brother was his surety on the note; that he owed them on account $800; that his brother assumed the note; and that he transferred Dyer's notes to secure the note and account he owed to Hill, Fontaine & Co., so far as they would extend; and that including the transfer of the Dyer notes, he had paid on his debts between the 1st of October, 1885, and the sale to Dyer $8,140. And still he owes his attaching creditors $4,400.

The defendant recovered judgment against plaintiff; and plaintiff appealed.

1. FRAUDU-
LENT
SALE:
*Evidence
showing in-
tent of ven-
or.*
In the course of the trial Dyer objected to the introduction of evidence to show the taking of the notes by Patton in the settlement of accounts, in the name of his wife, the mutilation of books, altering of dates, and changing of balances on books, because he had no connection with such acts. Was it competent?

In order for Taylor to maintain the issue on his part, it was necessary for him to show that Patton intended to cheat

and defraud his creditors in the sale to Dyer; and that Dyer participated in the fraud. Any evidence throwing light upon the intent of Patton was admissible. The evidence objected to, tended to prove transactions about the time of the sale to Dyer, which were so connected with each other as to show a general purpose of fraud, and that Patton was attempting to place his property beyond the reach of his creditors, and was admissible to show the motive which actuated him in the sale to Dyer. The inference is reasonable that the sale and the fraudulent transactions proceeded from the same motive. *Hawkins v. Warren*, 115 *Mass.*, 514; *McAleer v. Horsey*, 35 *Md.*, 439; *Craigin v. Tarr*, 32 *Me.*, 55; *Hovey v. Grant*, 52 *N. H.*, 569; *Pierce v. Hoffman*, 24 *Vt.*, 525; *Lincoln v. Claflin*, 7 *Wall.*, 132; *Bigelow on Fraud*, *p.* 478.

Plaintiff asked, and the court refused, to instruct the jury as follows: " That to render the sale of the goods in this instance void as to the creditors of the vendor, it must appear from the evidence, not only that the intent to defraud his creditors by such a sale existed in the mind of said vendor, but that said intent was *known* to the vendee—i. e. that he made said purchase from the vendor to aid him to cheat and defraud his creditors."

But the court instructed them as follows: " That if the jury find from the evidence that the plaintiff paid to the said Patton a part of the alleged consideration for the purchase of said goods in money, and in a draft which was afterwards paid, and gave his negotiable promissory notes for the balance, then the burden is upon the desendant under the issue in this case, to show that said sale was made by said Patton with intent to defraud his creditors, and that the plaintiff had notice of such fraudulent intent, or had knowledge of such facts as would put a reasonably cautious man upon inquiry; and

Dyer v. Taylor.

that with knowledge of such facts and without inquiry, he aided him to carry it out by making said purchase."

2. SAME: Notice to purchaser. It is contended that, "to render the sale of goods void as to creditors and vendors, it must appear from the evidence not only that the intent to defraud his creditors by such sale existed in the mind of the vendor, but said intent was *known*" to the vendee, and participated in by him; that the court below erred in refusing to instruct as asked; and that the instruction given was erroneous. But this is not true. To avoid a sale actual notice to the purchaser of the fraudlent intent of the vendor is not necessary. If the facts and circumstances within his knowledge are sufficient to put a man of common sagacity upon inquiry, and with the use of reasonable diligence, to lead him to the discovery of the fraudulent purpose of the vendor, and he neglects to make the inquiry, he will be charged with notice of the fraudulent intent. No purchaser put upon inquiry has a right to remain wilfully ignorant of facts within his reach. It is not sufficient for his protection to show that he is a purchaser for value; he must also be an innocent purchaser. By aiding a debtor to convert his property into money, or prommissory notes, which can be easily concealed from his creditors, and placed beyond their reach, with notice, actual or constructive, that he is doing so to defraud his creditors, he participates in the fraud of the debtor, by assisting him in carrying out his fraudulent purpose. *Clements v. Moore,*6 *Wall.,* 299, 311; *Singer v. Jacobs,* 11 *Fed. Rep.* 559; *Wood v. Carpenter,* 101 *U. S.,* 141; *Bigelow on Fraud, p.* 288 *and cases cited.*

At the request of plaintiff the court submitted to the jury the following questions, with an instruction to find specially in response thereto:

"First. Was the amount for which Patton sold the goods in controversy, a fair value for the same?

Second. Did Patton apply the money and notes received by him for said goods, towards the payment of his debts?"

In reply to these questions the jury stated in court they could not agree, and returned a general verdict in favor of defendant, and were discharged by the court.

Appellant insists that he was entitled to an answer to these questions; that an affirmative answer to both of them would have entitled him to judgment; and that the discharge of the jury, without answering because they could not agree, was equivalent to a mistrial.

An affirmative answer to these questions could not have aided the cause of appellant, or been inconsistent with the general verdict. If the jury had answered that the price for which Patton sold the goods was a fair price, it would not have been equivalent to saying that Patton had not furnished the means to make the cash payment, or that the sale was not made with a fraudulent intent. An affirmative answer to the second question would not have implied that the cash payment was made with Dyer's means, or that the sale was made in good faith. The sale being void as to creditors, they elected to treat it in that way, and did so by suing out orders of attachment, and causing the goods to be seized. The transfer of the notes of Dyer by Patton to his brother after the seizure, and the avoidance of the sale by the creditors, could not impart life to the sale, and make it valid. Their rights had attached. The law had given them the right to seize the goods and have them

condemned to satisfy the debts Patton was owing them; and they had availed themselves of their rights and taken steps to enforce them. Patton's effort to defeat them by transferring Dyer's notes to his brother was too late to accomplish its end.

The evidence was sufficient to show that Patton furnished Dyer in the ten bales of cotton, with a part of the purchase money he received tor the goods; and it is reasonable to infer from this fact, he furnished all the money paid, and that the consideration was simulated; and that Dyer was simply constituted an agent of Patton to sell the goods and pay him the proceeds. It was proven that the transfer of Dyer's notes was made after the goods were seized by the sheriff. We think the sale was fraudulent and that the evidence was sufficient to sustain the verdict of the jury.

The bill of exceptions fails to show any exceptions to the instructions given to the jury at the request of the defendant.

We find no error in the judgment of the court below prejudicial to appellant, and it is affirmed.