# HARRY I. BALL, Appellant, v. J. W. GRISMORE, Respondent.

In the Kansas City Court of Appeals, April 3, 1922.

1. **PLEADING: Counterclaim: Where Counterclaim Failed to Expressly Allege Material Facts, Held the Same Were Necessarily Implied by What Was Stated and the Defect Was Cured by Verdict.** Under section 1550, Revised Statutes 1919, a judgment will not be set aside for want of any allegation or averment on account of which omission a demurrer could have been maintained, and where a counterclaim failed to expressly aver material facts, the defect was cured by verdict, the presumption being that plaintiff proved on the trial the facts essential to recovery, although imperfectly alleging the same.

2. **———: ———: Where no Demurrer Was Filed to Counterclaim and the Imperfections Thereof Were Such as to be Cured by Verdict, the Court Did not Err in Overruling Objection to Introduction of Evidence Thereunder.** Where a counterclaim was not demurred to and the imperfections thereof were such as to be cured by verdict, the court did not err in overruling an objection to the introduction of any evidence thereunder on the ground that the same did not state facts sufficient to constitute a cause of action.

3. **FRAUD AND DECEIT: Question as to Whether Plaintiff Believed Statement as to Weight of Cattle to be True or False, Held Immaterial.** Where plaintiff believed he was purchasing cattle by the pound weight and not by the head, and the deceit alleged was that seller purposely read sales contract to plaintiff as one for sale by pound when its terms provided for sale by the head, *held*, the question as to whether plaintiff believed the statement as to the weight of the cattle, to be true or false, was immaterial.

4. **INSTRUCTION: Court Did not Err in Refusing a Requested Instruction Covered by Another Given Instruction.** Where court gave an instructnon which directed jury to find for plaintiff on his cause of action for amount of his claim, he cannot complain of refusal of court to give another instruction containing such a direction.

5. **WITNESSES: Party Cannot Claim There Was no Evidence of Certain Fact When His Own Testimony Shows the Contrary.** Where plaintiff claimed that there was no evidence of a certain fact and

the record showed that plaintiff's own testimony was to the contrary, his position is untenable in the light of his own testimony.

6. **DAMAGES: Where Verdict Was not Excessive the Exact Method by Which Jury Arrived at Amount Thereof was Immaterial.** Where the verdict for damages was not excessive the exact method by which jury arrived at the figures reflected in their verdict is not material.

7. **PLEADING: Counterclaim: Counterclaim Held to Sufficiently State Claim for General Damages and After Verdict an Objection That no Such Claim Was Made Cannot be Urged.** Where a counterclaim alleged that defendant should be allowed $7000 on account of damages sustained as hereinbefore stated, and that the amount thereof should be set off against the claim of plaintiff and judgment rendered in favor of defendant for the excess, *held*, after verdict to be a sufficient claim of general damages.

8. **FRAUD: Fraudulent Intent: Evidence: Where Fraudulent Intent is the Gist of the Action, Evidence Should be Allowed Wide Range and Other Transactions Which Have a Natural Tendency to Explain Motives of Party Accused are Admissible.** Where fraudulent intent is the gist of the action, the evidence should be allowed to take a wide range, and other transactions of the party accused of fraudulent intent, not only contemporaneous with the transaction in controversy, but previous and subsequent to it, which have a natural tendency to explain the motives with which it may have been effected, and which are not too remote and conjectural, should be gone into on question of fraudulent intent.

9. **FRAUD: Pleading: Evidence: On Question of Fraudulent Intent it is Unnecessary to Plead Other Transactions to Render Evidence Thereof Admissible.** Upon the question of fraudulent intetnt, it is unnecessary to plead other fraudulent transactions to render admissible evidence thereof.

10. **APPEAL AND ERROR: Jury Are the Judges of the Weght and Credibility of the Evidence.** The jury are the judges of the weight and credibility of the evidence and if the circumstances shown are such that reasonable and fair minded jurors may fairly believe therefrom that the truth of the charge has been established, the court on appeal cannot properly interfere with the verdict.

Appeal from the Circuit Court of Jackson County.—
*Hon. Thos. J. Seehorn,* Judge.

AFFIRMED.

210 M. A.—2

*John A. Showen* and *Samuel Feller* for appellant.

*Henry D. Ashley, William S. Gilbert* and *Daniel M. Bailey* for respondent.

ARNOLD, J.—This is a suit in attachment, plaintiff being a resident of Fairfield, Iowa, and defendant a resident of Putnam County, Ohio, both farmers and stockmen. The garnishee is the Lee Live Stock Commission Company of Kansas City, Missouri.

Plaintiff sued to recover the sum of $5895, the amount of a check drawn to plaintiff's order by defendant. A general denial and counterclaim were filed wherein defendant asked damages in the sum of $7000, bottomed upon fraud and deceit. Verdict was for plaintiff in the sum of $6211.19 and for defendant in the sum of $7000, and judgment was entered for defendant in the sum of $788.81 and costs. Plaintiff appeals.

The petition alleges that at defendant's special instance and request, on February 24, 1919, plaintiff paid, on behalf of defendant, to one George Stever, the sum of $5895, the same being part payment of the purchase price of and for ninety head of cattle purchased by defendant from said Stever. The petition further alleges that on said date defendant issued to plaintiff his personal check for said sum of $5895, drawn on the People's Bank Company of Columbus Grove, Ohio, payment on which was stopped by defendant. Plaintiff prays judgment for the total amount of the dishonored check and protest fee of $1.75.

The cause went to trial on defendant's second amended answer and after the opening statements of counsel, plaintiff moved for a judgment on the pleadings and opening statement of defendant, which motion was overruled by the court with permission for defendant to file an amended answer, which was done. This third amended answer, filed during the progress of the trial, pleads a counterclaim of $7000 based upon

fraud and deceit and that the said check was given under the belief that it was for part of the purchase price of about ninety head of cattle, or as many as would fill two cars, at ten cents per pound, and alleges that defendant fraudulently was induced to pay $110 per head therefor, irrespective of the weight, and that his signature to the contract of purchase of said cattle was obtained by misrepresentation, fraud and deceit on the part of plaintiff and one George Stever, and asks that the garnishee be required to pay to defendant the proceeds of the sale of the cattle amounting to $4041.66, and prays for judgment on his counterclaim.

Plaintiff, thereupon, filed a motion to strike out defendant's third amended answer "for the reason that the same is not an amendment but a substitution of a new and different defense and cause of action from that in the former answer pleaded, and is a departure." This motion was overruled and plaintiff duly excepted. Thereupon plaintiff filed reply to defendant's third amended answer in the form of a general denial. In this state of the pleadings the case went to trial. Plaintiff objected to the introduction of any evidence on the counterclaim for the reason that "same does not state facts sufficient to constitute a cause of action against plaintiff," which objection was by the court overruled.

Plaintiff's testimony tends to refute defendant's assertion that Stever guaranteed the cattle would weigh 1000 to 1100 pounds, and that Stever agreed to sell the cattle at ten cents per pound. His testimony further is to the effect that the cattle were billed by plaintiff to Kansas City, Mo., at the request of defendant and that plaintiff advised defendant against this course; that plaintiff had given his check to Stever and had accepted defendant's check for the amount of $5895, at defendant's request.

The testimony of defendant tends to show that on or about Feb. 23, 1919, defendant arrived at Chicago, Ill., intending to purchase cattle for feeding purposes;

that he went into a restaurant near the stock yards and, while there, entered into a conversation with a stranger seated upon a stool near him. He communicated to the stranger, who said his name was Farrow, his purpose to buy cattle. Farrow suggested that cattle could be bought in Iowa at $3 per cwt. cheaper than at the Chicago stock yards, and advised defendant to go to Ottumwa, Iowa, and see a Mr. John Carrow. Accordingly Grismore left for Ottumwa that night, arriving before day the next morning. He called Mr. Carrow over the telephone and the latter came to the hotel. Carrow stated he had no cattle such as Grismore desired, but that he knew where such cattle could be found and defendant then agreed to go with him to see the cattle. While they were waiting for a train defendant went with Carrow to a cigar store, smoked a cigar which Carrow bought, became ill and thereafter "was miserable" all day.

They took a train east out of Ottumwa to a destination unknown to defendant and when the name "Fairfield" was called by the conductor, defendant states he recalled that town had acquired a reputation of being a dangerous place in which to purchase cattle, on account of the operations there of a gang of cattle sharpers and that this fact had been advertised in certain eastern papers. On arriving at Fairfield, Carrow telephoned to plaintiff Ball. Later Ball appeared and was introduced to defendant Carrow. Ball stated he had no cattle such as would answer defendant's purpose, but that his cousin, George Stever, did have such cattle.

Early in the afternoon of the same day Ball procured a conveyance and, with defendant and Carrow, drove to the farm of Stever who showed them some cattle weighing about 400 pounds each which defendant said he could not use; as he wanted cattle weighing 1100 pounds. Stever then said he had some cattle of that description on a farm about six miles away. The three men then drove to that farm, accompanied by several

men on horseback and when the cattle were rounded up, defendant remarked that in his judgment the cattle would not weigh over 600 pounds and that they were not the kind of cattle he could use. Stever answered that they would weigh 1100 pounds and in this assertion he was corroborated by Ball. The men left the pasture and started towards Fairfield when Stever rode up on horseback, stopped the buggy in which Grismore, Ball and Carrow were riding, and asked Grismore if he could use the cattle if he priced them to him. Grismore said the cattle would not weigh 1000 or 1100 pounds and he did not think he could use them. Stever then said:

"You came to buy cattle and we are going to make you buy these cattle."

Ball also said at that time, "We are going to make you buy these cattle."

This shocked and frightened defendant. Stever said he would guarantee the cattle would weigh 1000 to 1100 pounds and Grismore then said it would be all right if Stever would guarantee them to weigh that. Stever said he would take $125 a head for them, and Grismore protested he never bought cattle by the head; after considerable haggling, defendant says Stever agreed to sell the cattle to him at ten cents a pound. While seated with Grismore and Carrow in the buggy, Ball drew up a contract which he read aloud, purporting to be the effect that Stever sold and Grismore bought at ten cents a pound as many of the bunch of ninety head of cattle as would go in two cars. This contract, set out in the record, is as follows:

"This is to show that Geo. Stever has sold to J. W. Grismore what will go in two cars Grismore pick out of 90 head $110 per head $5 payed as part payment.

(Signed) Geo. F. Stever,

J. W. Grismore."

Defendant protested that he never made a written contract for cattle he bought and did not want to make one at this time. Then Stever said it was the rule with

them not to drive cattle into town without a written contract. The contract then was signed and defendant paid down $5 cash, though he did not read the contract because he did not have on his glasses. His glasses were in his pocket, but he felt so miserable, had a headache, Ball and Carrow were sitting so close to him that he said to Ball, "Go on and read it." He could have pulled his glasses out of his pocket but did not. As Ball read the contract to him, he was to pay ten cents a pound for the cattle.

The cattle were driven to Fairfield and, after reaching there, late in the afternoon, defendant was told there were no scales in town upon which the cattle might be weighed. Stever accepted a draft for $4000 in part payment and refused to accept defendant's personal check for the balance, amounting to $5895, but said he would accept Ball's check, which he did, and Ball took Grismore's check for the amount.

Defendant states the cattle were hurriedly loaded into the cars by the aid of pitchforks and other instruments of torture and that he was put into the caboose. He states he did not know the cattle were on their way to Kansas City until he had been on the train some time and was so told by the conductor; that he thought he was on his way to his home in Ohio.

The train arrived in Kansas City on February 26, and the cattle were sold on the market, netting $4041.66. Grismore at once wired the bank in Ohio, on which the check was drawn, to stop payment thereon. The cattle were billed by Ball, as consignor, to the Lee Live Stock Commission Company, to be sold account of J. W. Grismore. Defendant asked the Commission Company to pay him the proceeds of the sale but they refused unless they were directed so to do by consignor, Ball. The Company thereupon communicated by telephone and telegraph with Ball who, in the meantime, had been advised that payment had been stopped on the check of defendant, and Ball directed that the money be not paid to

Grismore. Suit then was instituted by Ball by attachment of the proceeds of the sale of the cattle in the hands of the Commission Company and trial to a jury resulted as stated above.

Defendant's third amended answer and counter-claim, after reciting in detail the facts and circumstances covering the entire transaction, "avers that the plaintiff herein, Harry I. Ball, George Stever and said John Carrow had at and before the transaction, conspired and confederated together to deceive, cheat and defraud this defendant in the sale of said cattle; and that this defendant believed and relied on said false and fraudulent representations and pretenses." And, "that by reason of the fraudulent and dishonest dealing of said plaintiff this defendant has suffered great damage, to-wit, this defendant has paid a draft for $4000 . . . has signed a check for $5895, payable to the plaintiff herein; the defendant paid $5 to George Stever as earnest money at the time he signed the aforementioned contract to purchase the cattle; the defendant has never received any payment from the Lee Live Stock Commission Company for the cattle sold by it; and by reason of the fraudulent conduct of plaintiff and his associates, this defendant has been put to great expense for traveling, attorney's fees, and the production of witnesses at this trial."

This case is now before us on rehearing and parties have submitted additional briefs. Plaintiff's first assignment of error, in his supplemental and substituted statement, brief and argument, as in his former statement, brief and argument, is that "the court erred in overruling plaintiff's objection to the introduction of any evidence on the counterclaim because same does not state facts sufficient to constitute a cause of action against the plaintiff."

As shown by the record, all defects and irregularities except that the counterclaim wholly fails to state a cause of action are cured by the verdict. Section

1550, Revised Statutes 1919, fully covers the situation in enumerating the imperfections for which a judgment will not be set aside, among which are specified". . . for want of any allegation or averment on account of which omission a demurrer could have been maintained; . . . for omitting any allegation or averment without proving which the triers of the issue ought not to have given such a verdict . . .''

Construing this statute the Supreme Court held, in Thompson v. Ins. Company, 217 Mo. 485, 497:

"It does not follow that, because a petition is defective and subject to a general demurrer, it would be insufficient to sustain a verdict. On the contrary the well-settled rule, both at common law and under our code, is that if a material matter be not expressly averred in the petition, but the same is necessarily implied by what is stated in the context, the defect is cured after verdict, the doctrine resting on the presumption that plaintiff proved on the trial the facts imperfectly alleged, the existence of which was essential to his recovery. [People's Bank v. Scalze, 127 Mo. l. c. 189, and cases there cited; sec. 672, R. S. 1899; Salmon Falls Bank v. Leyser, 116 Mo. 51, l. c. 73.]''

Also as to the application of subdivision 9 of the section, it is held in Heman v. Allen, 156 Mo. 534, 540, 57 S. W. 559, "that no judgment after trial shall be reversed, impaired or in any way affected for omitting any allegation or averment without proving which the triers of the issue ought not to have given such a judgment."

An insufficient petition, not demurred to, is good after verdict. [Thomasson v. Insurance Co., 114 Mo. App. 109.] After careful analysis of the questions presented, we find against the contention that defendant's counterclaim failed to state facts sufficient to constitute a cause of action and hold that the allegations therein contained the elements necessary to sustain a verdict and judgment founded on fraud and deceit. There was no er-

ror in the action of the trial court in overruling plaintiff's objection to the introduction of evidence thereon. [Bank v. Hutton, 224 Mo. 42; Brown v. Lead & Zinc Co., 194 Mo. 681; Stratton v. Dudding, 164 Mo. App. 22.]

Plaintiff's second assignment of error charges (1) that defendant, having admitted in his evidence that he know the approximate weight of the cattle, and that he was not deceived by what plaintiff said as to their weight, it was error for the court to submit the case to the jury, as there could be no recovery; that defendant examined the cattle and the rule of *caveat emptor* applies. (2) That defendant admitted before he acted that he knew the truth about the contract, therefore he was not deceived; (3) that defendant admitted he did not pay for the cattle and, therefore, there could be no recovery.

The third amended answer and counterclaim allege reliance of defendant upon the alleged false and fraudulent representations as being true. On cross-examination, defendant stated he was not deceived about the weight of the cattle, and that he did not believe they weighed as much as plaintiff claimed. He testified, however, that he believed he was purchasing the cattle by the pound weight and not by the head. If this be true, the question as to whether he believed the statement as to the weight of the cattle, to be true or false, is immaterial. The deceit alleged is that plaintiff purposely read the contract wrong and also that plaintiff's statement, that there were no scales in Fairfield where the cattle might be weighed, was false. We rule against plaintiff on this point.

In the third assignment of error in plaintiff's supplemental brief, he contends that instruction No. 1 is erroneous (a) because it is inconsistent with, and contrary to, instruction No. 5, given as modified by the court, and (b) that there was no evidence that there was a scale at Fairfield, Iowa, on the day the cattle were sold, on which they could have been weighed, and that this fact was not pleaded in the counterclaim; and (c) that the

trial court omitted to instruct the jury on the duty of Grismore to read the contract before signing it, and in failing to tell the jury that he was bound thereby.

It is evident that counsel had in mind instruction No. 5 offered by plaintiff and refused by the court. Instruction No. 5 as given, is as follows:

"The jury are instructed that under the law, it was the duty of Mr. Grismore, the defendant, to read the contract of sale before signing the same, and he is bound by said contract, unless you find and believe from a preponderance of the evidence that said Grismore failed to read said contract before signing the same, because of false and fraudulent representations or statements made by the plaintiff, Ball, and upon which the defendant, Grismore, at the time, relied, and that he had not then at hand the means of ascertaining the fact that such false and fraudulent representations were made; or was not intentionally induced by the plaintiff Ball not to do so."

It is concluded, therefore, that the trial court cured any inconsistency in the instructions by the addition of the clause "or was not intentionally induced by the plaintiff Ball not to do so." [Och v. Railway, 130 Mo. l. c. 71; Livingston v. Strong, 107 Ill. 143.]

In Wannell v. Kem, 57 Mo. l. c. 493, it is said: "We doubt if it is equity to allow a sharper to insist on a fulfillment of his bargain, on the ground that his victim was so destitute of sagacity as to make no further inquires."

And in Pomeroy v. Benton, 57 Mo. l. c. 542, the court says: "It is no excuse for, nor does it lie in the mouth of the defendant to aver, that plaintiff might have discovered the wrong and prevented its accomplishment, had he exercised watchfulness, because this is but equivalent to saying: 'You trusted me, therefore, I had the right to betray you.'"

Plaintiff contends there was no evidence that there was a cattle scale at Fairfield, Ia., on the day the cattle

were sold, on which they could have been weighed, and that this fact was not pleaded in the counterclaim. On cross-examination plaintiff testified as follows:

"Q. And didn't you say to him that 'there isn't a scale in that county on which you can weigh the cattle'? A. No, sir.

"Q. Not a word about that? A. No, sir.

"Q. Well, was there a cattle scale at Fairfield at that time? A. Yes, sir.

"Q. And is today? A. Yes, sir.

"Q. At the Burlington Railroad, isn't it? A. Yes, sir.

"Q. How far is that from the Rock Island Stock Yards? A. About six blocks, I think.

"Q. Had the Rock Island a scale there at that time? A. No, sir.

"Q. This scale was not in use there? A. No, sir."

This testimony refutes plaintiff's contention on this point. To say the least the question was one for the jury, and its verdict was against plaintiff.

Under his fourth assignment of error, plaintiff urges that the court erred in refusing to give his peremptory instruction, as asked, directing a verdict for the amount of plaintiff's claim. The record shows that plaintiff asked two peremptory instructions which were refused because they not only asked the court to direct a verdict for plaintiff on his petition, but also to find against defendant on his counterclaim.

The court, however, did give an instruction (No. 2), which directed the jury to find for plaintiff on his cause of action for $5896.95, together with interest from February 26, 1919. This would seem to have met plaintiff's objection that defendant's answer and counterclaim failed to contain a general denial, because the jury, thus directed, found for plaintiff on his cause of action and it is now immaterial whether the answer and counterclaim contained a general denial or not.

This observation applies also to plaintiff's insistence that the court erred in refusing to give his instruction

No. 5, as offered, and in giving the same as modified by the court.

For his sixth assignment of error plaintiff urges that the verdict was not warranted by the pleadings because (a) there was no evidence that there was no scale at Fairfield where cattle could be weighed; (b) that the measure of damages used by the jury in arriving at a verdict was incorrect and (c) that defendant claimed no general damages and the court excluded all evidence with reference to the special damages pleaded, therefore, the most that defendant could recover was nominal damages only.

As to the first of these objections, plaintiff's position is untenable in the light of plaintiff's own testimony to the contrary as above set out. As to point (b) the jury were properly told in the instructions that they were the sole judges of the evidence and of the credibility of the witnesses, and that they might take into consideration all the surrounding circumstances. Defendant introduced witnesses whose testimony tended to discredit the honesty of the dealings in cattle by plaintiff Ball and George Stever. Evidently the jury believed the statements of these witnesses, as they had a right to do. The exact method by which the jury arrived at the figures reflected in their verdict is not material. In our opinion the verdict is not excessive.

As to point (c) the record fails to sustain plaintiff in this contention. The counterclaim pleads, among other things, "that a counterclaim should be allowed in behalf of the defendant of $7000, on account of the damages sustained as hereinbefore stated, the same to be set off against the claim of the plaintiff herein, and judgment to be rendered in favor of this defendant for the excess; and that the defendant be allowed to go hence with his costs in this behalf sustained."

After verdict, plaintiff may not urge this objection.

Finally, as his seventh assignment of error, plaintiff objects that the trial court erred in admitting the evidence of Freel Wade, B. O. Howard and William S.

Hayes, because their evidence was as to transactions which they, themselves, had with plaintiff, and because said transactions were not pleaded in defendant's counterclaim.

Where fraudulent intent is the gist of the action, the evidence should be allowed to take a wide range and other transactions of the party accused of fraudulent intent, as in the case at bar, not only contemporaneous with the transaction in controversy, but previous and subsequent to it which have a natural tendency to explain the motives with which it may have been effected, and which are not too remote and conjectural, should be gone into. [Manheimer v. Harrington, 20 Mo. App. 297; Massey v. Young, 73 Mo. 260, 273.]

It will not be seriously contended that the pleader is required to set forth his evidence, and plaintiff's suggestion that this matter was not pleaded is not worthy of consideration. That the evidence was admissible as bearing upon the question of fraudulent intent of plaintiff in his dealing with defendant, we are quite satisfied. Fraud may not be presumed and its proof involves the necessity of showing facts justifying a finding of wrongful intent. In the very nature of things this is difficult except as it is fairly inferable from the conduct of the party charged with the wrong.

The jury are the judges of the weight and credibility of the evidence and if the circumstances shown are such that reasonable and fair-minded jurors may fairly believe therefrom that the truth of the charge has been established, this court cannot properly interfere with the verdict. This case comes clearly within this rule.

As bearing upon the question of intent, the rule is well established that evidence is admissible of other similar acts of the accused in his dealings with others at, or about, the same time and in connection with transactions of the same general character. [Starr v. Stevenson, 91 Ia. 687; Bank v. Wise, 172 Ia. 27; Porter v. Stone, 62 Ia. 442; Stouffer v. Alford, 114 Md. 391; Mudsill Min-

ing Co. v. Watrous, 61 Fed. 180; Cook v. Perry, 43 Mich. 627, 5 N. W. 1057; Exc. Bank v. Moss, 149 Fed. 343; State v. Brady, 150 Ia. 196.]

In principle quite like the present case is Eastman v. Premo, 49 Vt. 355, where the plaintiff charged defendant with fraud in the purchase of some horses and it was held permissible to show that about the same time, defendant was engaged in other similar alleged frauds in the purchase of horses from other persons. The court said:

"For the purpose of showing defendant's intent, we think the evidence admissible. Upon this view of the alleged purchase the defendant's fraudulent intent is a material fact to be made out and in such case collateral transactions may be shown."

We can see no reason why this evidence was not admissible. It was both material and competent. It certainly was not irrelevant, for it was directed to the basic allegations in defendant's third amended answer.

For the reasons herein stated, we hold the verdict was a righteous one, for the right party, and should be affirmed. It is so ordered.

All concur.