J. A. KING, RESPONDENT, v. THE CITY OF ROLLA, MISSOURI, APPELLANT.—130 S. W. (2d) 697.

In the Springfield Court of Appeals. June 13, 1939.

18

*Llyn Bradford, W. D. Jones* and *Phil M. Donnelly* for appellant.

*Harry Clymer* and *E. W. Allison* for respondent.

ALLEN, P. J.—This case was filed in the Circuit Court of Phelps County, on March 17, 1934, and was tried, at the September Term of said court, on plaintiff's second amended petition and defendant's amended answer thereto.

Plaintiff's second amended petition alleged that he was the owner of a farm of 275 acres, which adjoins the corporate limits of defendant, City of Rolla. The petition further alleged that in May, 1929 the defendant completed the construction of a septic tank on a tract of land owned by defendant and adjacent to plaintiff's premises, and that since that time raw sewage from all parts of the city has been dumped into this tank and continuously discharged from it into Love Creek, which creek flows through plaintiff's farm. It is alleged that the sewage in this tank and which is discharged from it into Love Creek, gives off offensive and unbearable odors and that since the construction of this septic tank and its discharge into the creek, the water therein has become wholly unfit for stock or any other farm use, whereas prior to that time it was pure and clean. The petition asked damages in the sum of $10,000.

The amended answer of defendant contained, besides a general denial, first, a plea that the septic tank referred to in the petition was completed in 1928 and had been operated continuously thereafter and for a period of more than five years before the filing of this suit, and that plaintiff's cause of action, if any, is barred by operation of the five year Statute of Limitations; second, that for more than ten years prior to the construction of the septic tank referred to in plaintiff's petition, the defendant, City of Rolla, had continuously discharged its sewage into Love Creek, through plaintiff's land,

and that any cause of action plaintiff might have had was barred by the ten-year Statute of Limitations; and third, that at the time plaintiff purchased this farm and for several years prior thereto, the City of Rolla had used this creek for the discharge of the city sewage and that plaintiff purchased the farm with full knowledge and notice of such condition and was therefore estopped from maintaining any action for damages by reason thereof.

Plaintiff's evidence was to the effect that he purchased the farm in question in 1919; that it is located just south of the City of Rolla, contains 275 acres with about 200 acres in cultivation and has two dwelling houses on it and is suitable for stock raising and general farming purposes. That the creek referred to—Love Creek—flows in a southeasterly direction through the farm for a distance of about three-fourths of a mile and has running water in it the year around. Plaintiff's evidence further showed that the present city septic tank, known as the Imhoff Tank, was completed and the city sewage emptied into it in the year of 1929; that prior to that time there was an old tank located about one-half mile north of where the Imhoff Tank was located, on Love Creek, and that the sewage from the City of Rolla was discharged into the old tank and thence into Love Creek; that prior to the construction and operation of the Imhoff Tank Love Creek had fresh, pure and wholesome water in it which was suitable for stock purposes; that boys swam and fished in the creek where it flows through plaintiff's farm and no offensive odor arose from the creek, but since the construction and operation of the present Imhoff Tank the discharge from the tank into the creek is a dark color, contains solid matters as well as liquids, which give off foul and offensive odors and that the creek all through plaintiff's land is polluted; that it has a dark scum on it and offensive odors arising from the creek are noticeable all over the farm; that stock will not drink from the water and when driven across it offensive substances collect on their bodies and the gravel in the bed of the creek and along the banks is contaminated to a depth of two or three feet.

Plaintiff's evidence further disclosed that none of the structures nor the pipe were located on the farms in question, but were located on land adjacent to the farm.

Plaintiff's evidence showed, and it was undisputed, that the entire sewage from the City of Rolla is emptied into the Imhoff Tank and that at the time this tank was constructed there were between four and five miles of additional lines added to the City's sewer system and since the tank was installed several new sewer districts have been established and the population of the City of Rolla has increased from 2250 in 1920 to 3670 in 1930 and has been increasing since 1930. Plaintiff also introduced evidence as to the value of the farm, showing that before the Imhoff Tank was constructed and put in operation

the reasonable market value of his farm was $22,000 and that immediately thereafter it was worth only $2,000 or $3,000. Several witnesses testified as to the market value of the farm before and after the Imhoff Tank was put in operation and their opinions relative to values varied considerably. Some thought the farm was worth from $12,000 to $15,000 immediately before the Imhoff Tank was put in operation and that immediately thereafter its value was reduced to at least half.

At the close of the plaintiff's evidence defendant submitted a peremptory instruction in the nature of a demurrer to the evidence, which was overruled. Defendant then offered testimony to support the defenses pleaded in the answer. In order to show that the present septic tank was completed and began to operate in 1928, as set forth in defendant's answer, defendant introduced in evidence that part of plaintiff's original petition, wherein plaintiff alleges that this septic tank was constructed in 1928 and at all times thereafter had been maintained by defendant city.

Defendant's evidence showed that before the Imhoff Tank was constructed the city had an old septic tank which was located about 3200 feet north of the present tank. The old tank was constructed in the winter of 1907 and spring of 1908 as the result of a bond election of the City of Rolla, and was situated about thirty yards north of the bank of Love Creek. This tank was simply a square, concrete box, about eighteen feet deep and had two partitions in it. From the time the old tank was put in operation in 1908, until the spring of 1928, when the new tank was completed, all raw sewage from the City of Rolla was enptied into the old tank and discharged into Love Creek and flowed through the land now owned by plaintiff. Defendant's evidence further shows that during all this time the water in Love Creek, as it flowed through the plaintiff's farm and for a mile or more below, was black and very dirty and there was a bad odor from it. The water was not suitable for stock purposes and this condition existed at the time plaintiff bought the farm in question, in 1919.

Defendant's evidence further showed that the contract for the construction of the Imhoff Tank and sewer system was let in September, 1927 after an election had been held for the issuance of bonds under Ordinances 316 and 317. The work was begun about thirty days thereafter and the entire project completed and approved in May, 1928. It was put in operation almost immediately thereafter and began to discharge sewage into Love Creek and has been operated continuously since that time. When the new system was completed in the spring of 1928 the mayor appointed a commttee from the Board of Aldermen to inspect the tank to see if it was operating according to specifications. It was shown by the testimony of the sanitary engineers that the Imhoff Tank in question removes about ninety per cent of the settleable solids from the sewage by a process

of sedimentation and that this material goes in the sludge beds and does not get into Love Creek; and that in 1928 the Imhoff Tank was an approved form of sewage disposal. Defendant's witnesses testified that the condition of Love Creek, through plaintiff's land, since the completion of the new system is no worse than before and that consequently the market value of plaintiff's premises has not been reduced.

Plaintiff introduced two witnesses in rebuttal to controvert the defendant's evidence as to the condition of Love Creek, where it flows through plaintiff's farm, while the old tank was in operation. These witnesses testified that prior to the construction and operation of the Imhoff Tank the water in Love Creek was clean and suitable for stock purposes and that boys swam in it in the spring of the year, but that they had seen sewage in the creek while the old tank was in operation. Two of plaintiff's witnesses in chief testified to the effect that there was some contamination of Love Creek while the old tank was in operation and before the Imhoff Tank was put in operation, but that the condition was much worse after the Imhoff Tank was put in operation. It was undisputed that the old tank was constructed during the years 1907 and 1908 by the City of Rolla and began operating in 1908.

At the close of all the evidence, defendant again submitted a peremptory instruction in the nature of a demurrer to the evidence, which was overruled. The case was submitted to a jury and a verdict was returned in favor of the plaintiff, assessing his damages at $5,000. Defendant filed a motion for new trial, which was overruled and the case comes to this court on appeal by defendant.

Respondent filed a motion to dismiss this appeal on the ground that appellant had not complied with rule fifteen of this court, regarding the preparation of the abstract of the record and on the theory that certain parts of the abstract which should be shown in the record proper, appear in the abstract as a part of the bill of exceptions.

Respondent further contends in this motion that the evidence of the witnesses was not reduced to narrative form, but that in reducing it for the abstract of the record the appellant has merely stated conclusions of appellant's counsel. The abstract of the record should contain a complete history of the case in short, abbreviated form, as found in the record. The abstract should be complete enough to show that the questions presented for review have been properly preserved. The record proper, as set out in the abstract, does not mean that the whole of the pleadings or other records in the case should be set out *in haec verba*, but in the record proper there should be a showing of the pleading filed, a showing of the judgment entered, the date of its rendition; the filing of the motion for new trial, or motion in arrest of judgment and the time thereof; the overruling of such motion, the leave to file bill of exceptions, the filing of the bill of

exceptions, the affidavit for appeal, the order granting the appeal and the filing of the appeal in the appellate court. These should be set out in abbreviated form, sufficient to show that such things are of record. It is much better if these matters relating to the record proper are abstracted at the beginning of the abstract of the record, as a part of the record proper. Yet, if these things appear in the abstract of the record, under that part of the abstract of the record dealing with the bill of exceptions and no objections are made thereto, then under rule fifteen of this court, such matters shall be considered and treated as set forth in their proper place, and under this rule, unless the opposing party shall, within fifteen days after the service of such abstract upon him, specify his objections and the reasons therefor, in writing, and serve the same upon the opposing party or his counsel, in accordance with rule fifteen of this court, then such objection is deemed waived. However, if such objection is timely made, then the party presenting the abstract of the record shall have ten days, under the rules of this court, to correct the abstract of the record.

In the present abstract of the record all of the material matters, showing the steps necessary to the appeal are shown in that part of the abstract dealing with the bill of exceptions. They contain a sufficient narrative of the steps taken to perfect the appeal so that the abstract of the record, absent timely objections as provided under rule fifteen, is not defective in this respect.

The abstract of the record was served on respondent on April 7. No objection was filed thereto, but a motion to dismiss the appeal was filed on the 27th of April, twenty days after the abstract of the record was served on respondent. We therefore rule against the respondent on his objection to the abstract of the record on the grounds that the matters and things which should be properly set out in the abstract of the record, were contained in the bill of exceptions, for the reason that no timely objection was filed thereto under rule fifteen of this court. The motion to dismiss filed by respondent, if it be taken as an objection to the appellant's abstract of the record, was not filed within the time prescribed under the above rule.

The respondent next contends that the abstract of the record is not in narrative form under rule fifteen. A close reading of the abstract of the record, relative to the narration of the testimony of witnesses leads us to the conclusion that while this might be stated in poor form, yet it is in effect a narrative sufficient to comply with the rules of this court. In reducing the testimony of witnesses to narrative form lawyers should take great care to prepare this testimony in the narrative form, exactly as it appears in the questions and answers contained in the bill of exceptions. Conclusions of the lawyers, regarding the testimony should not be stated in reducing the testimony to narrative form. The abstract of the record in this case, in the opinion of this court, is not a statement of conclusions, but is an awkward

attempt to narrate the testimony of the witnesses and does not offend in this sufficiently to cause a dismissal of the appeal.

Respondent's motion to dismiss the appeal under rule twenty-five of this court was served on the appellant on the 27th day of April and was filed on the 28th day of April, in this court. Rule twenty-five provides that a party in any cause, desiring to present a motion either to dismiss an appeal or writ of error; or to affirm the judgment of the trial court, shall notify the adverse party or his attorney of record, in writing, of his intention to file said motion *at least five days before the same is filed,* and shall accompany said notice with a copy of the motion, and in all cases the court will require satisfactory proof that proper notice has been given.

The notice in this case was insufficient, under rule twenty-five of this court, therefore we cannot consider respondent's motion to dismiss. [First Natl. Bank of Joplin v. Carter, 243 S. W. 234; Broyles v. State Highway Commission, 223 Mo. App. 71, 8 S. W. (2d) 1021.]

This brings us now to the question of the merits of respondent's cause of action involving directly his right of recovery in this action. In viewing this evidence we can only reach one conclusion—that is that the waters of Love Creek were originally polluted when the City of Rolla built the old tank in 1907 and 1908 and began discharging its sewage into Love Creek and that undoubtedly as the City increased in population and as more sewers were connected, the contamination increased. According to respondent's evidence this contamination increased even after the Imhoff Tank was put in operation.

The authorities of this State have been in conflict as to what theory of law should be applied to cases of this nature and as to whether they are governed by the law of nuisance or the law of eminent domain. However all conflicts, which existed in the past, have been definitely settled by the case of Modeana Riggs v. City of Springfield, 126 S. W. (2d) 1144. This case holds that cases of this nature are governed by the law of eminent domain and not by the law of nuisance. The City of Rolla had a right, under the statutes to utilize Love Creek for sewage purposes. [Mining Co. v. City of Joplin, 124 Mo. 129, 27 S. W. 406; Smith v. City of Sedalia, 244 Mo. 107, 149 S. W. 957; City of Cape Girardeau v. Hunze, 314 Mo. 438, 284 S. W. 471; 47 A. L. R., 25; Riggs v. City of Springfield, *supra.*] The defendant city could acquire this right legally, under the statutes, by condemnation proceedings and the damage could have been fixed for all time. [Riggs v. City of Springfield, *supra.*] However the City of Rolla in 1908, when it began to utilize Love Creek for sewage purposes, merely appropriated the right without condemnation proceedings, but its failure to first condemn in no way impaired the right of the owner of the land in question to compensation, nor was the measure of damages affected thereby. It makes no difference whether

the City of Rolla acquired the right to use Love Creek for sewage purposes by condemnation or by appropriation—the measure of damages is the same, the diminution in the market value of the land. The injury is the same, the damage is the same and the compensation should be the same in either case. [McReynolds v. R. R., 110 Mo. 484, l. c. 488, 19 S. W. 824; Riggs v. City of Springfield, *supra*.] The owner of the land, upon the completion of the old tank could have brought suit to recover damages to his farm by reason of the erection and maintenance of the sewer system and its outlet. His damages recoverable would be the same as the damages that could have been awarded to him in condemnation proceedings. In either event the final damages could have been ascertained at that time.

In this case the City of Rolla did not disturb the property of the then owner, nor did it divest him of any proprietary rights; it did not invade his land and the structures which were erected were not erected thereon. The damages so arising are consequential in their nature and it was not necessary that they be paid in advance of the work. [McGrew v. Granite Paving Co., 247 Mo. 549, 155 S. W. 411; Lemon v. Garden of Eden, D. D., 310 Mo. 171, 275 S. W. 45.] When the City of Rolla began to use Love Creek in 1908 for the discharge of its sewage, without condemnation proceedings it merely appropriated the right to so use the stream and the right of action arose in favor of the then owner of the farm in question by reason of the provisions of the Constitution of Missouri, section 21, Article 2, which provides that private property shall not be taken or damaged for·public use without compensation. Such appropriation was permanent in its nature and in using Love Creek for sewage purposes the city was acting within its legal rights (Smith v. City of Sedalia, *supra*; Mining Co. v. City of Joplin, *supra*; City of Cape Girardeau v. Hunze, *supra*; Riggs v. City of Springfield, *supra*) subject only to the restriction that the riparian owners were entitled to recover damages arising from such use and appropriation, and the rights of action arose out of the appropriation of this use by the City of Rolla and came into being at the time the stream was subjected to the use. [Riggs v. City of Springfield, *supra*.] Under such circumstances, even though the injury or damage complained of takes the form of a nuisance, yet the right of action accrues under the above provisions of the Constitution and is governed by the law of eminent domain and not by the law of nuisance. [Riggs v. City of Springfield, *supra*; Smith v. City of Sedalia, *supra*.]

The damages being consequential in their nature the five year Statute of Limitations provided in section 862, Revised Statutes of Missouri 1929 applies. [Riggs v. City of Springfield, *supra*.]

The appellant, City of Rolla, properly raised the bar of the Statute of Limitations in its answer and preserved this point by timely demurrers both at the close of the plaintiff's evidence and at the

close of all the evidence in the case. The respondent's cause of action having been extinguished by the running of the five-year Statute of Limitations the trial court should have sustained the demurrer of defendant, City of Rolla, and directed a verdict in its favor. The judgment is reversed. *Smith, J.,* concurs; *Fulbright, J.,* not sitting.