Sidney R. PINGER and Alyce M. Pinger, Plaintiffs-Defendants,

v.

GUARANTY INVESTMENT CO., a corporation, Defendant,

L. E. Hotaling and Leonard A. Lamar, individually and co-partners d/b/a Hotaling-Lamar Realty Company, Defendants-Appellants.

No. 22551.

Kansas City Court of Appeals. Missouri.

Oct. 7, 1957.

Barnett & Skeer, Kansas City, for appellants.

E. E. Thompson, F. Russell Millin, Sam Mandell, Kansas City, Popham, Thompson, Popham, Mandell & Trusty, Kansas City, of counsel, for respondents.

SPERRY, Commissioner.

This is a suit for damages alleged to have resulted to plaintiffs growing out of the purchase of a house from defendants. The action is based upon false representations. Verdict and judgment for plaintiffs against all defendants, for compensatory damages, in the amount of $5,400. Defendants Hotaling and Lamar appealed.

Defendant Guaranty Investment Company (hereafter referred to as corporation) was engaged in Kansas City, in the construction of houses for sale. Defendants Hotaling and Lamar, hereafter referred to as appellants, were partners in the real estate business and had an exclusive contract with the corporation for the sale of all of their houses.

The evidence discloses that the corporation contracted to sell a house, to be constructed at 9126 Holmes, to Mr. and Mrs. Jacobson. The Jacobsons testified that they paid $300 on the purchase price and, after the house was completed, discovered that the basement walls had settled and cracked so that they could see the house across the street, from inside the basement. Lamar stated to them that the house had settled and the basement had been repaired two or three times. They notified the corporation and appellants of the condition they had learned of, refused to

accept the house, and demanded back their money. The corporation, thereafter, again "fixed" the cracks in the basement walls and in the floor.

Plaintiffs, without any knowledge of its damaged condition, sought to buy the house and Lamar showed it to them. They had had no experience whatever in purchasing real estate. They said Lamar told them the foundation rested on solid rock which had been blasted; that the foundation and walls were solid; that it could not settle. They stated that when they inspected the basement it was late in the evening, near dusk; that the walls were coated with some white substance and the floor was painted blue; that they did not see any cracks, and relied on Lamar's representations. They purchased the house for $13,900, and took possession, paying $500 down on the property. They stated that, afterward, the door upstairs got out of line and they discovered that the foundation had settled, that the basement walls and floor were badly cracked; that the cracks had been filled and painted over; and that the cracks were widening and the house was settling further; that they complained to appellants, and tried to contact the corporation; that they could get no relief from any of the parties; that one crack in the basement wall opened two inches wide and they found newspapers stuffed into some of the cracks, with filling and paint over them. They spent $375 in an effort to correct the defects, but the cracks reappeared. They then employed another contractor and paid $926 for further repairs, but the cracks again opened, although not so badly.

The testimony was overwhelmingly to the effect that the condition complained of was well known to all defendants, long prior to the sale made to plaintiffs. In fact, such knowledge is not in dispute. There was evidence from which a jury could have found that the true condition of the property was deliberately concealed from plaintiffs, that the house was repre-

sented to be well and solidly built, with the foundation resting on solid rock so that it would never settle; and that plaintiffs innocently relied on its being soundly built and in sound condition. There was substantial expert testimony to the effect that the difference between the reasonable market value of the house, had it been in the condition represented, and its value in the condition it actually was in, was $5,400.

Appellants offered testimony to the effect that, while the cracks had been repaired, they were plainly visible to any observant person who looked. They denied that the condition of the house was in any manner misrepresented. Lamar stated that when he showed the house to plaintiffs Mrs. Pinger asked about the cracks, what caused them; that he told her the house had settled; that it might have been caused by drought conditions; that he doubted it would settle again but did not know. He admitted that Hotaling called his attention to the cracking; that he inspected it; that he knew that it had been repaired two or three times before plaintiffs inspected the house.

One ground relied on by appellants in their motion for new trial was that juror Lofstrom, on voir dire, had failed to answer their query as to whether any juror was acquainted with Mr. Millin (one of plaintiffs' attorneys), when, in fact, said juror well knew the attorney. They contend that, had they known the truth as to this matter, they would have stricken Lofstrom's name, that they did not have a fair trial as a result of his failure to answer. With the motion they filed several affidavits to the effect that Millin and Lofstrom had been well acquainted, for 27 years. One of said affidavits was that of Mr. Capen, Jr.

Plaintiff filed counter affidavits. They also offered the testimony of Mr. Capen, Jr., whose affidavit appellants had filed. Mr. Capen stated that he had not seen Mr. Millin for 26 years; that he knew Millin and juror Lofstrom when witness was about 5 years of age but had not seen Lofstrom

since; that he could not identify either Lofstrom or Millin; that he did not know whether Millin and Lofstrom were well acquainted now. Plaintiffs also offered the testimony of juror Lofstrom, who testified to the effect that he had known Millin 27 years before, when they were small boys, living in the same neighborhood; that he had not seen Millin for 27 years and did not recognize him at the trial; that he heard his name mentioned on voir dire but that he did not connect the name with a small boy he knew 27 years before.

Mr. Millin testified that he knew juror Lofstrom some 27 years prior to the trial, but that he did not remember it at any time during the trial, and did not recognize Lofstrom during the trial; that he had not seen Lofstrom, to know him, since they were small boys in the same neighborhood.

Appellants filed and offered the affidavit of Eugene Lofstrom, a brother of the juror, as rebuttal evidence. Upon objection that it was offered out of time and did not constitute evidence it was rejected. Complaint is made of that ruling.

■ Section 510.350 RSMo 1949, V.A.M.S., provides that the court may permit reply affidavits. Admission of the affidavit was within the sound discretion of the trial judge and we cannot say that his ruling thereon was erroneous.

During the testimony of Mrs. Jacobson who, with her husband, had contracted to buy the house before construction was completed, she was asked concerning a letter written by her to Mr. Denny, originally a defendant herein and an officer of the corporation. Objection was entered regarding reference to the contents of the letter. The court stated that it might be referred to for the purpose of establishing notice to defendants of the condition of the house, but sustained the objection "as to what appears to be their private controversy."

Thereafter, counsel for plaintiffs read from the letter the following: "Then began the series of sickening thuds that left us poleaxed, culminating in Mr. Hotaling reneging on his word that we would receive our money back, etc."

Appellants specifically objected to that statement in the letter after it was read to the jury, saying that it was highly prejudicial. At the same time they asked for a mistrial, to all of which the court answered: "Overruled." Appellants now complain that the court admitted said evidence over their objection. The record does not bear out their contention as to the court having ruled the evidence admissible. The court's repeated rulings (as appellants on page 29 of their brief admit) indicates that no part of the letter was ruled admissible except to prove notice, make it clear and that only that part of the letter dealing with notice to defendants of the condition of the house prior to plaintiffs purchase of it, was ruled admissible. It is, therefore, apparent that the court intended only to overrule the motion for mistrial. Defendants did not follow up and insist that the court specifically rule the objection to the reading of that portion of the letter.

■ If it was error to read that portion of the letter to the jury, appellants did not object thereto until after it was read. An objection made after the evidence is in comes too late, especially where, as here, appellants knew of the contents of the letter and had time to make the objection, as to that part, before the reading was completed. Coffey v. S. S. Kresge Co., Mo. App., 102 S.W.2d 161, 163. Appellants did not move to strike. Therefore, there was nothing before the court which required it to specifically rule the objection regarding the reading. Harrison v. St. Louis-San Francisco Ry. Co., 339 Mo. 821, 99 S.W.2d 841, 843. Furthermore, this being a fraud case, other transactions of the party, which have a tendency to explain the motives with which it may have been effected, if not too remote and conjectural, can properly be gone into. Ball v. Grismore, 210 Mo.App.

16, 29, 239 S.W. 524. The court is vested with sound discretion in granting a new trial, or a mistrial, in situations of this kind, and we cannot say such discretion was abused in this case.

■ Appellants complain of the giving of Instruction No. 1, for plaintiffs, for the reason that it excludes appellants' theory of defense, which was that plaintiffs saw, or could readily have seen evidence of the cracking of the basement walls and floor when they inspected it prior to purchase. Defendants pleaded that as a defense, offered evidence tending to prove the issue, and relied on it in the trial.

The instruction consists of two and one-half typewritten pages. We will refer to it only so far as necessary to indicate its gist.

The instruction hypothesized and required findings of: construction and ownership of the house by the corporation; the agency of defendants in its sale; representations by defendants to the effect that the foundation was sound and firm, had not settled; that the walls and floor of the basement were sound and firm and had not broken or cracked; that the house was so constructed that settling of the foundation could not occur; the falsity of such representations; the knowledge of defendants of such falsity; the fraudulent intent of defendants in making such statements; plaintiffs' ignorance and unawareness of the falsity of the statements; plaintiffs' inexperience in the purchase of houses; that they were entitled to and did rely on said statements; and that they were directly influenced and induced thereby to purchase the house.

Appellants contend that, while plaintiffs pleaded latent defects, they submitted only such defects as might have been discovered by observation. Plaintiffs failed to submit *all* of the false statements they alleged, and which the evidence supported, regarding defects not ordinarily discoverable. However, the instruction required the jury to find that defendants stated that the foundation was sound and firm and had not settled, in order to authorize a verdict. There was evidence to the effect that the foundation rested on a fill, with tree trunks and other debris in it and that a spring of water ran from under the foundation and floor. Whether that statement as to the firmness of the foundation was true, plaintiffs had no way of learning from an ordinary inspection of the house. The fact that there was coupled with it, in the conjunctive, submission of assurance of the absence of defects that may have been discoverable upon inspection, is not material.

■ An instruction which covers the whole case and hypothesizes facts which, if found to be true, would negative defenses on which proof is submitted by defendant, is good. Delametter v. Home Insurance Company, 233 Mo.App. 645, 126 S.W.2d 262, 269. This instruction required the jury to find the following facts which, this court has said (Wolf v. Kansas City Tire & Service Company, Mo.App., 257 S.W.2d 408, 413), constitute the essential elements of fraud in a case such as this, to-wit:

"* * * (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon."

The instruction required that the jury find such facts from the evidence, which includes all evidence, that tending to prove said facts as well as that contradictory thereof. To find for plaintiffs the jury was required to consider and reject the evidence of appellants tending to prove that the defects complained of were easily discoverable. The instruction may not be a

model one, but we hold that it is not prejudicially erroneous.

Appellants next contend that the court erred in refusing to give their Instruction 12, which is as follows:

"You are instructed that if you believe from the evidence that the defects complained of by plaintiffs were patent, that is, such as might have been discovered by ordinary vigilance on the part of plaintiffs, then defendants, or any of them, were not bound to point out such patent defects, and hence your verdict should be for defendants, and each of them, and against plaintiffs."

Appellants say they had a right to have their theory of defense submitted in an instruction. Conceding that fact, yet such an instruction should contain every constitutive factual element essential to a favorable verdict. State ex rel. Grisham v. Allen, 344 Mo. 66, 124 S.W.2d 1080, 1083. This instruction directs a verdict upon a finding that plaintiffs could have discovered the defective conditions without requiring that they were discoverable at the time of, or prior to, the execution of the contract. It was properly refused for that reason. Furthermore, representations submitted to the effect that the foundation was firm, could not have been discovered by ordinary surface inspection. The instruction was properly refused.

The court gave Instruction "C" as follows:

"The court instructs the jury that if you find the issues in favor of the plaintiffs and against the defendants and that plaintiffs are entitled to compensatory damages only, your verdict may be in the following form:

" 'We, the jury, find the issues in favor of the plaintiffs and against the defendants, Guaranty Investment Company, L. E. Hotaling, and Leonard A. Lamar, and that plaintiffs are entitled to compensatory damages in the sum of $— (stating the amount).' "

Appellants charge error because it directed the jury " * * * if it found for respondents at all, to render a verdict against defendant Guaranty Investment Company and appellants. In other words, that instruction precludes the jury from rendering a verdict against Guaranty Investment Co., and in favor of appellants."

Plaintiffs had alleged conspiracy but abandoned and did not submit that issue. Appellants say:

"Absent a conspiracy, the parties were in the relation of principal and agent; that is, the defendant, Guaranty Investment Company, was the principal, having built the house in question on land which it owned, and having hired appellants, real estate brokers, to sell said house. It is well known, and no argument is offered to the contrary, that if the agents were guilty of any fraud while pursuing, or in furtherance of the principal's business, the principal would automatically be liable jointly with the agents."

Where conspiracy was charged against several defendants, but not proved, the court said: "If the evidence * * * showed that any one or more of such persons were guilty of perpetrating the fraud, then such person or persons would be liable * * *."

Here the evidence showed that all of the representations made to plaintiffs were made by these two appellants. Both admitted that they knew of the settling of the foundation, of the walls, and of their repair two or three times, prior to the sale to plaintiffs. In Leimkuehler v. Wessendorf, 323 Mo. 64, 18 S.W.2d 445, 452, the court said: "The gist of the action is fraud, and all defendants who participated therein are liable." To the same effect see Orlann v. Laederich, 338 Mo. 783, 92 S.W.2d 190, 194.

Since all of the representations relied on by plaintiffs to establish their charges of fraud were made by appellants, their acquittal would have meant that Guaranty Investment Company was not guilty of fraud. Under all of the testimony plaintiffs never, at any time, during their negotiations for the purchase of the property, talked to anyone except these two appellants. This case is unlike these where the agent was ignorant of the facts, or of the actions of the principal, constituting the fraud. Appellants' contention as to this instruction should be rejected.

Appellants also urge that the amount of damages is excessive. The amount allowed is the exact amount of difference in the value of the property as represented and its value in the condition that it was in. There was no other testimony on the question. The point is without merit.

The judgment should be affirmed.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed.

All concur.