STATE of Missouri ex rel. STATE HIGHWAY COMMISSION of Missouri, Relator-Appellant,

v.

CITY OF WASHINGTON, Missouri, Defendant-Respondent.

No. 59028.

Supreme Court of Missouri, Division No. 1.

Feb. 9, 1976.

Motion for Rehearing or to Transfer Denied March 8, 1976.

Bruce A. Ring, Chief Counsel, Mo. State Highway Dept., Jefferson City, John H. Gladden, Asst. Counsel, Joplin, for relator-appellant.

L. B. Eckelkamp, Jr., Joseph M. Ladd, Jenny, Cole & Eckelkamp, Sidney A. Thayer, Jr., Washington, for defendant-respondent.

HOLMAN, Presiding Judge.

The Missouri State Highway Commission (hereinafter called plaintiff) filed this suit against the City of Washington seeking to recover one-half of the amount it expended in obtaining the right-of-way for Route 100 as constructed through said city. It was alleged that defendant contracted to reimburse plaintiff for one-half of said right-of-way cost but that defendant failed and refused to pay the same. A trial resulted in a verdict for plaintiff in the amount of $29,600.

Defendant's motion for a new trial was sustained by the court for the following reasons:

"(1) The alleged contract between the parties is ultra vires because it is in violation of Section 26(a) of Article 6 of the Constitution of the State of Missouri;

"(2) The alleged contract between the parties is ultra vires because it does not specify the consideration as required under Section 432.070 of the Revised Statutes of Missouri."

Plaintiff has duly appealed. We have appellate jurisdiction because issues here presented involve the construction of constitutional provisions. Art. V, Sec. 3, Mo. Const. V.A.M.S. We reverse and remand with directions to reinstate the judgment.

The contract in question was admitted in evidence. It is rather detailed and covers nine pages of the transcript. Therein the plaintiff agreed to construct the highway through the City of Washington along a route described in the contract. The contract also contained the following:

"15. Commission and City shall each pay 50% of the right-of-way costs. Commission will, in the first instance, pay for all right-of-way or other property inter-

ests required within the limits of City in connection with this improvement and will make requisition upon the City from time to time for reimbursement for such payment for its share of the costs of right-of-way, and, upon receipt of such requisition, the City agrees promptly to pay Commission the amount of the same. The estimated share of the cost of right-of-way to be paid by the City is $32,500. At the signing of this agreement City has appropriated and encumbered to this project the full amount of $32,500, so that the acquisition of right-of-way may begin."

Also admitted in evidence was Ordinance No. 3191 adopted by the council of defendant city which authorized the mayor and city clerk to sign the said contract. On behalf of plaintiff the contract was executed by the chairman and secretary of the Commission. It was executed by the City on December 20, 1965, and by the Commission on January 7, 1966.

Portions of the right-of-way were acquired from time to time during the years 1967, 1968 and 1969. The total cost was $59,200. Over the objection of plaintiff the court permitted a showing by defendant that plaintiff had been reimbursed by the federal government for one-half of said right-of-way cost and that on January 12, 1968, plaintiff suspended its policy of requiring urban areas to participate in right-of-way costs.

Art. VI, Sec. 26(a), Mo.Const. V.A.M.S. reads as follows: "No county, city, incorporated town or village, school district or other political corporation or subdivision of the state shall become indebted in an amount exceeding in any year the income and revenue provided for such year plus any unencumbered balances from previous years, except as otherwise provided in this constitution." We will first consider whether the trial court ruled correctly in granting a new trial on the first ground of defendant's motion, i. e., that the contract was ultra vires

on the part of defendant because in violation of the quoted constitutional provision. We have concluded that the court erred because there is no evidence in the transcript to support that ruling.

■ The year to be considered in ruling this point is 1966 because obviously the contract did not become binding upon either party until it had been executed by both. Although the City executed the contract in December, 1965, it was not executed by the Commission until early January, 1966. The question presented, therefore, is whether the defendant, by reason of the contract, became indebted in an amount exceeding the income and revenue provided for the year 1966 plus any unencumbered balances from previous years. This defense was pleaded by defendant and hence the burden was upon it to prove facts to support it. There is nothing in the evidence to show the amount of defendant's revenues for 1966 or any other year.

The only effort of defendant to prove its financial condition was an offer of the minutes of the meeting of the council on December 20, 1965, in which the following appears: " 'Councilman Bocklage said that they have not determined where the $32,500 for the City's part of the rights of way of Route 100 is coming from. Mayor Strubberg said the City will probably have to vote a bond issue as they did for Route 47.' " The court sustained an objection to that portion of the exhibit. In its brief defendant contends that the court erred in excluding that evidence and that we should affirm the granting of the new trial for that reason. The difficulty with that contention is that the exclusion of that evidence was not complained of in the motion for new trial and therefore the point is not preserved for review.

■ The other reason assigned by the trial court for granting a new trial is that the contract was ultra vires because it did not specify the consideration as required by

Section 432.070.[1] That section reads, in part, as follows: "No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless . . . and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing."

It should be noted that the contract did not specify the exact amount of money defendant would be required to pay thereunder. Obviously it could not so specify because the amount would depend upon future developments which were unknown to either party. It provided that defendant would pay 50% of the right-of-way costs and estimated the amount to be $32,500. The actual amount as later ascertained was $2,900 less than the estimate.

In support of the trial court's ruling on this point defendant relies primarily on the case of *Bride v. City of Slater*, 263 S.W.2d 22 (Mo.1953). In that case a fuel oil dealer sought to recover for oil furnished under a contract which provided that the price "shall be seller's market price then existing." The trial court sustained a motion to dismiss plaintiff's petition on the ground that the contract failed to state a definite price and therefore violated Section 432.070. In affirming, this court observed that the price was entirely conditioned on the will of the seller. In discussing the question we stated that, "Statutes requiring municipal contracts to be in writing usually are construed to be mandatory, and a strict compliance therewith is required in order to bind a city. . . . In speaking of the purpose of the statute, 432.070, supra, this court said in the early case of *Woolfolk v. Randolph County*, 83 Mo. 501, the manifest purpose of the requirement is that the terms of the contract shall, in no essential particular, be left in doubt, or to be determined at some future time, but shall be fixed when the contract is entered into. This was one of the precautions taken to prevent extravagant demands, and to restrain officials from heedless and ill-considered engagements. . . . A court should unhesitatingly enforce compliance with all mandatory legal provisions designed to protect a municipal corporation and its inhabitants. Inasmuch as municipal corporations represent the public, they, themselves, are to be protected against the unauthorized acts of their officers and agents." 263 S.W.2d 26.

Plaintiff, on the other hand, mainly relies on the case of *Burger v. City of Springfield*, 323 S.W.2d 777 (Mo.1959). In *Burger* plaintiff had been employed by the city to represent it in negotiating for purchase of the water works, the contract providing that he should receive "a reasonable compensation for services and expenses to be fixed by the council upon completion of his services." The trial court sustained a motion to dismiss. We reversed and remanded, stating, "The mere fact that, at the time the contract was executed, the amount to be paid by the City could not then be determined in dollars and cents did not adversely affect the validity of the contract. . . . The contract in question being in writing and expressly providing for reasonable compensation for services to be rendered and which have been rendered was sufficiently definite and certain as to the consideration to be paid so as to constitute a valid contract under Section 432.070, supra." 323 S.W.2d 784, 785.

We think the instant case is clearly distinguishable from *Bride* upon the contract terms. Here the terms are definite and certain and a standard is provided by which the consideration to be paid by defendant would be definitely determined. The right-of-way could be acquired by plaintiff either by purchase or condemnation. It is reasonable to assume that in acquiring by purchase plaintiff would not pay more than the fair market value therefor. As to that acquired by condemnation the property owner was entitled to "just compensation"

---

1. All statutory references are to RSMo 1969, V.A.M.S.

and the statutes provide a definite procedure for ascertaining such. In other words, it may be said that defendant knew that plaintiff could acquire the right-of-way only in the manner provided by law and agreed to pay 50 percent of the cost of obtaining the designated right-of-way pursuant to the constitutional and statutory provisions which controlled plaintiff.

It is our view that the consideration stated in the contract before us is certainly as definite as that stated in the contract in *Burger*. We think the *Burger* decision is controlling in this case and on the basis thereof we rule that the contract in question did not violate Section 432.070.

■ What we have heretofore said will indicate our view that neither of the assignments designated by the trial court for granting the new trial were sufficient to warrant that action. Defendant, however, seeks to support the granting of the new trial by another point which actually relates to two affirmative defenses. It contends that the contract was contrary to plaintiff's policy not to require cities to share right-of-way costs on a relocation project and that the contract resulted from coercion. We observe that these affirmative defenses are not such as would warrant this court in declaring the contract invalid as a matter of law because they depend on factual determinations. It should be noted also that there is no suggestion as to the manner in which the trial court erred in regard to these defenses.

Our disposition of this point is such that we need not consider serious questions concerning the sufficiency of the pleadings and proof regarding these defenses. This, because it is our view that these affirmative defenses were abandoned at trial and hence are not preserved for appellate review. Our conclusion in that regard is based on the fact that defendant did not request instructions submitting those defenses.

It is an elementary rule that failure to request an instruction thereon constitutes an abandonment of an affirmative defense.

See *Yeager v. Wittels*, 517 S.W.2d 457[11] (Mo.App.1974), *Studt v. Leiweke*, 100 S.W.2d 30[13] (Mo.App.1937), *Mock v. Missouri Union Insurance Company*, 328 S.W.2d 61[3] (Mo.App.1959) and *Eastman Kodak Stores, Inc. v. Summers*, 377 S.W.2d 476[4] (Mo.App.1964).

Plaintiff's case was submitted by the following instruction: "Your verdict must be for plaintiff if you believe:

"First, defendant agreed to pay to plaintiff fifty percent (50%) of the cost of acquisition of right of way inside defendant's corporate limits, and

"Second, defendant failed to pay to plaintiff fifty percent (50%) of the cost of acquisition of right of way for Route 100 inside defendant's corporate limits, and

"Third, plaintiff was thereby damaged."

The only instruction offered by defendant was a converse of plaintiff's submission and it was given by the court. Therefore, defendant is in no position to contend that the affirmative defenses under consideration would support the new trial order since those defenses were abandoned at trial.

The foregoing will indicate our view that there was no valid basis for granting a new trial in this case.

The order granting a new trial is accordingly reversed and the case is remanded to the trial court with directions to reinstate the judgment for plaintiff.

All concur.