John Comer OWEN and Bessie B. Owen, Plaintiffs (Respondents and Cross–Appellants),

v.

CITY OF SPRINGFIELD, Missouri, a municipal corporation, Defendant (Appellant and Cross–Respondent),

and

Frank Coluccio Construction Company, a Washington corporation, Defendant (Respondent).

No. 69054.

Supreme Court of Missouri, En Banc.

Nov. 17, 1987.

Rehearing Denied Dec. 15, 1987.

Robert Handley, Asst. City Atty., Howard C. Wright, Jr., City Atty., Springfield, Bruce Ring, Jefferson City, for defendant (appellant and cross-respondent).

John G. Newberry, Springfield, for plaintiffs (respondents and cross-appellants).

HIGGINS, Judge.

John Comer Owen and Bessie Owen had a verdict for $40,875 damages against the City of Springfield on a claim that the City's sewage lift station constructed and operated near their home constituted a permanent nuisance. Mr. and Mrs. Owen were denied a verdict on their claim for damages for temporary nuisance against the City and Frank Coluccio Construction Company. Judgment was rendered accordingly. Defendant City appealed from that part of the judgment which awarded plaintiffs $40,875 in damages; plaintiffs appealed that part of the judgment which denied their claim for damages for temporary nuisance. The Court of Appeals, Southern District, affirmed the judgment. This Court transferred the case to review whether Mr. and Mrs. Owen were foreclosed in this proceeding by recovery in a prior condemnation proceeding affecting the same land. The judgment on the award of $40,875 to plaintiffs is reversed, and is otherwise affirmed.

On December 30, 1977, the City of Springfield filed a Petition In Condemnation in furtherance of certain sewage projects to be constructed in accordance with a plan of the Public Works Department filed with the petition.

The City sought to take approximately 1½ acres from the 109 acre farm of defendants John Comer and Bessie E. Owen to construct the James River Lift Station. The lift facility was designed to receive and pump approximately 6,000,000 gallons of raw sewage per day, utilizing two 400–horsepower, 4,200 gallons-per-minute

pumps, and to vent the sewer fumes and gases to the atmosphere. It was to be located approximately 100 yards from the Owen residence.

The City's petition prayed that commissioners be appointed "to ascertain and assess the damages ... the defendants as owners of the tracts of land ..., may sustain by reason of taking, condemnation and appropriation of such tracts of land and the just compensation to which defendants may be entitled in consequence of the taking, condemnation and appropriation of said tracts of land."

Mr. Owen valued the 1½ acre tract taken at $3,000.00. The commissioners awarded Mr. and Mrs. Owen a total of $22,651.00 for the taking and its consequential damages. The commissioners' report was filed April 28, 1978.

On May 10, 1978, Mr. and Mrs. Owen filed their exception to the commissioners' award thus preserving their right to jury trial on the damages sustained as a result of the City's condemnation and use of their property.

The lift station was constructed and placed in operation in January 1981; Mr. and Mrs. Owen immediately experienced sewage odors and engine noise emanating from the lift facility.

■ Notwithstanding existence and pendency of the right to jury trial on their exception to the damages awarded resulting from the condemnation and construction of the sewage facility, Mr. and Mrs. Owen had, on September 10, 1980, filed a petition in inverse condemnation which, as subsequently amended, served as plaintiffs' pleading at the trial which gave rise to this Court's consideration of the issues between Mr. and Mrs. Owen and the City of Springfield. Plaintiffs alleged in Count VIII of their petition that the lift station "will create additional noise and vibration and noxious odors and sewage fumes." Although plaintiffs style their claim and action for "permanent nuisance" it is in the nature of and treated here as a claim for inverse condemnation. Where the nuisance is caused by a municipality in the exercise of a governmental function and is non-tor-

tious, the same is not subject to abatement and the municipality is considered to have appropriated the permanent right, which is in the nature of an easement, to invade landowners' property. *Barr v. KAMO Elec. Coop.*, 648 S.W.2d 616, 618–19 (Mo. App.1983); *Stewart v. City of Marshfield*, 431 S.W.2d 819, 822–23 (Mo.App.1968); *Lewis v. City of Potosi*, 317 S.W.2d 623, 629 (Mo.App.1958). The landowner may collect all his damages at once, the measure thereof being the diminution in value of his property by reason of the appropriation. *Lewis*, 317 S.W.2d at 629; *King v. City of Rolla*, 234 Mo.App. 16, 24, 130 S.W.2d 697, 701–02 (1939).

On June 10, 1982, Mr. and Mrs. Owen dismissed their exception to the commissioners' award. Because the City had filed no exception, the Owens' dismissal terminated the condemnation suit and fixed the Owen's damages at $22,651.00, for and as a result of the taking of their property for the purposes expressed.

The City's answer to the inverse condemnation suit instituted by Mr. and Mrs. Owen set up the original condemnation proceeding and damage award as a bar of *res adjudicata* to the issues they sought to have addressed under their petition for inverse condemnation.

There is no disagreement between Mr. and Mrs. Owen and the City that plaintiffs' suit sought damages for permanent noise and odor "unavoidably caused in the operation of the lift station." Plaintiffs' theory was so submitted in their verdict-directing Instruction No. 43. The question then is whether Mr. and Mrs. Owen had the opportunity to tender such claim in the prior condemnation suit before their dismissal of exception brought it to final judgment. If so, they were precluded from the verdict in question by the final judgment in the prior suit.

In *Powell, et al., v. City of Joplin*, 335 Mo. 562, 73 S.W.2d 408 (1934), this Court recognized the "familiar rule" that a judgment is conclusive not only as to questions which were raised, but as to every question which could have been raised. The Court

applied the rule to affirm the dismissal of a representative suit filed subsequent to a merits resolution of a prior representative suit. In *Winthrop Sales Corporation v. Shelton, et al.,* 389 S.W.2d 70 (Mo.App. 1965), the court held that the failure to tender an issue which is available prior to rendition of the judgment precludes its being raised thereafter in a proceeding between the same parties involving the same thing. In *Smith v. City of Sedalia,* 244 Mo. 107, 149 S.W. 597 (1912), this Court held that an action for injunction to abate an alleged permanent nuisance was barred by a pending suit for damages where both suits sought relief on account of the City's discharge of sewage into a watercourse running through Smith's land.

■ Damages incidental or consequent to a condemnor's use of land for the purposes acquired are subject to consideration in the condemnation case and are subject to assessment by jury upon exceptions duly filed. *See Citizens Electric Corp. v. Amberger, et al.,* 591 S.W.2d 736 (Mo.App. 1979); *KAMO Electric Cooperative, Inc. v. Baker,* 365 Mo. 814, 287 S.W.2d 858 (1956); *Jones v. St. Louis Iron Mountain and Southern Ry. Co.,* 84 Mo. 151 (1884); *McCormick v. Kansas City, St. Joseph and Council Bluffs R.R. Co.,* 57 Mo. 433 (1874); and *Clark's Administratrix v. Hannibal & St. Joseph Ry. Co.,* 36 Mo. 202 (1865).

■ In the original condemnation action the City gave notice to the Owens through its petition and construction plan that the sewage facility on their land would utilize heavy duty pumps to handle 6,000,000 gallons of raw sewage per day, venting its fumes and gases to the atmosphere. This knowledge was in addition to general knowledge that raw sewage has an offensive odor and that heavy duty pumps produce noise. These items were submitted as the "unavoidable damages" in the second cause of action; and it is not sufficient to argue that the second cause of action was for something different, "unanticipated damages." The Owens were advised by the plan that they could expect and anticipate odor and noise; and they did in fact experience odors and noise at a time when their condemnation exception was still pending. Both items of damage were cognizable in the original condemnation action and the commissioners did award the Owens $22,651.00 for the value of the land taken and the consequential damages occasioned by the taking.

In these circumstances, plaintiffs had their day in court in the original condemnation action and are barred from a second day in court on the same issues.

With respect to plaintiffs' appeal from denial of their claim for temporary nuisance damages, this Court adopts without further attribution the following substance of the opinion of the Court of Appeals.

■ This claim was based upon alleged tortious trespasses by Coluccio in the construction of a sewer line upon easements across plaintiffs' land. The work was done by Coluccio under contract with the City.

Appellants charge error in that the court entered judgment in favor of both Coluccio and the City, although the jury's verdicts do not name the City but only Coluccio. The verdict is on a typewritten form with blanks to be filled in by the jury. The form says:

On the Claim of plaintiffs John Comer Owen and Bessie E. Owen for temporary nuisance against defendants Frank Coluccio Construction Company and City of Springfield, Missouri, we, the undersigned jurors, find in favor of:

| (Plaintiffs John Comer Owen and Bessie E. Owen) | (Defendants Frank Coluccio Construction Company and City of Springfield, Missouri) |
|---|---|

In the verdict returned by the jury, the space above "(Plaintiffs John Comer Owen and Bessie E. Owen)" is left blank. There is written into the space above "(Defendants Frank Coluccio Construction Company and City of Springfield, Missouri)" only the name of "Frank Coluccio Construction Co."

The typewritten verdict form goes ahead to say:

"We the undersigned jurors, assess the damages for plaintiffs John Comer Owen and Bessie E. Owen at $_____." The blank

for the amount of damages was left uncompleted by the jury.

Appellants claim that such verdict leaves open, undisposed of and pending their claim against the City. They also claim that the verdict is ambiguous as to both defendants, and that a new trial is required as to both defendants.

The jury's intent by its verdict is clear when the entire record is considered. The verdict-directing instructions in the case directed a verdict for the plaintiffs against both defendants if the jury found certain hypothesized tortious conduct by Coluccio; there was no hypothesization which would allow a verdict for or against either defendant by itself. The verdict was not for plaintiffs against either defendant. The acquittal of agent Coluccio *ipso facto* acquitted the principal City as well. *Pinger v. Guaranty Investment Co.*, 307 S.W.2d 53, 59 (Mo.App.1957). The verdict and judgment in this case would be a bar to a later prosecution of the same claim against the City.

The case would be different if the City's liability were not derivative from that of Coluccio—as, for example, in the case of *Smith v. Welch*, 596 S.W.2d 84 (Mo.App. 1980), cited by appellants, where the liability of one of three defendants was based upon his alleged independent acts. The failure of the jury to bring in a verdict disposing of the claim against him was held to require a remand of the case for a new trial as to him.

■ Appellants also claim the court erred in admitting certain testimony of witnesses Frank Coluccio, David Baker, O.K. Clark and David Snider on the ground that they had not been disclosed as expert witnesses in answer to an interrogatory of plaintiffs, citing *Manahan v. Watson*, 655 S.W.2d 807 (Mo.App.1983), and *Stephens v. Kansas City Gas Company*, 354 Mo. 835, 191 S.W.2d 601 (1946). Witness Coluccio was the owner, and Baker and Clark were employees of Frank Coluccio Construction Company, who had actually participated in the construction work. Their testimony was given in defense of plaintiffs' claim that Coluccio trespassed outside the bounds of the easement, compacted the ground, did not replace the topsoil, threw beer cans on the property, and created a temporary nuisance. The plaintiffs' evidence in chief had included the testimony of Dr. Harry James, who testified that the soil on the plaintiffs' farm was compacted due to heavy machines; that the soil was disturbed due to the heavy machinery; and that Coluccio did not follow the specifications of the project.

The objected-to testimony of Coluccio, Baker and Clark was that pads, upon which the backhoe rested during the construction work, were used to keep the machine from sinking into the ground; that Coluccio followed the plans and specifications in the construction work; and that the use of the backhoe was necessary in the construction project.

These were not "expert witnesses" in the sense that they were engaged by a party in anticipation of litigation to testify to scientific or technical matters. They were observers and participants in the events and transactions of the case. If some of their testimony incidentally called upon their learning and experience for conclusions and opinions, and could in that sense be called "expert testimony," that does not make them "expert witnesses" within the meaning of Rule 56.01(b)(4). *See Krug v. United Disposal, Inc.*, 567 S.W.2d 133, 135–36 (Mo.App.1978); *Missouri Public Service Company v. Allied Manufacturers, Inc.*, 574 S.W.2d 509, 511–12 (Mo.App.1978) (dictum). Plaintiffs were not unfairly surprised or disadvantaged by their testimony. The trial court was well within its discretion in overruling the plaintiffs' objections to the testimony.

David Snider, director of public works involved in the construction work, was called as a witness by the City. His objected-to testimony related to facts which had no bearing upon the issues in plaintiffs' claim against the City and Coluccio and could in no way have prejudiced them in their claims against the City and Coluccio.

Accordingly, the judgment for damages in favor of plaintiffs against the City is reversed and the cause is remanded with direction to enter judgment for defendant

City of Springfield; the judgment against plaintiffs on their temporary nuisance claim against the City and defendant Coluccio is affirmed.

BLACKMAR, DONNELLY, WELLIVER and ROBERTSON, JJ., concur.

RENDLEN, J., dissents in separate opinion filed.

BILLINGS, C.J., dissents and concurs in separate dissenting opinion of RENDLEN, J.

RENDLEN, Judge, dissenting.

For the reasons following, I respectfully dissent.

"Res judicata" literally translated means the matter has been adjudged. As a working legal principle it includes a "thing *definitely settled by judicial decision*, judicial judgment or judicial opinion." (Emphasis added.) *Smith v. Smith*, 299 S.W.2d 32, 35 (Mo.App.1957). The doctrine embodied in the concept provides a complete bar to any subsequent action; however, res judicata is an affirmative defense, Rule 55.08, which must be pleaded and proved by the party asserting it. *Newton v. Newton*, 622 S.W.2d 23, 25 (Mo.App.1981); *Dallas v. Dallas*, 233 S.W.2d 738, 734 (Mo.App.1950).

In some cases applicability of res judicata is determinable merely from an inspection of the record and becomes a question of law for the court. *Agnew v. Union Construction Co.*, 291 S.W.2d 106, 109 (Mo.1956). However, when as here its application *requires extrinsic evidence* it becomes a question of fact and must go to the jury. *Tutt v. Price*, 7 Mo.App. 194 (1879); 50 C.J.S. *Judgments* sec. 846 (1947). Because the availability of the affirmative defense in this case rested on the presentation of extrinsic evidence, it was incumbent on the City to request an instruction submitting the question to the jury, *State ex rel. Highway Comm. v. City of Washington*, 533 S.W.2d 555, 559 (Mo. 1976), and despite a warning to the City during the instruction conference that the issue was one for the jury, it failed or elected not to offer such instruction there-

by waiving and foreclosing its affirmative defense. *Id.*

The meager record before us indicates that on December 30, 1977 the City sought to condemn and carve approximately 1½ acres from the Owens' 109 acre farm home in Greene County. The condemnation petition described the land to be taken as tract No. 1 *James River Lift Station and Force Main.* In the sparsest terms it described the City's purpose in condemning the land as:

> to construct the James River Lift Station, the Ward Branch Trunk Sewer and James River Interceptor and to maintain public sanitary sewers for said City.

The order of taking was granted and the Commissioners appointed to assess damages concluded their duties by filing a report on April 28, 1978 fixing damages to the Owens for appropriation of land for the lift station at $22,651.

The lift station was subsequently constructed approximately 100 yards from the Owens' home, and when placed in operation during January 1981, began to emit foul odors and emanate excessive noise. The station constructed employs two 400–horsepower electric pumps which operate alternately forcing untreated sewage through an inclined 24–inch force main a distance of 13,000 feet to a higher elevation. The pumps operate from 6 to 24 hours per day, and there is an additional 185 horsepower diesel generator for emergency power which is run for testing purposes once each week. As a part of the total system, a variety of fans and pumps contribute to the resulting noise level. An employee of the City involved in the operation and maintenance of pump stations described how raw sewage is collected from a large geographic area by gravity lines in a large open reservoir at the lift station known as a "wet well." He admitted that raw human waste is gathered in this reservoir and that during this process the waste "ferments," heightening the malodorous fumes emitted by the system. From the "wet well" this fermented sewage is pumped into the force main by the machinery housed on the 1½ acre plot.

Witnessing these sorry developments, the Owens filed the present suit for permanent nuisance and in June 1982 dismissed their exceptions in the condemnation proceeding. Because the City had filed no exceptions to the Commissioners' report, the Owens' dismissal terminated that action.

In this suit for permanent nuisance,[1] the City filed its amended answer alleging the judgment in the condemnation action as res judicata and a bar to the claims presented here. The City argued the award of damages in early 1978 for taking the land by condemnation included the diminution in value to the remaining portion of the Owens' property occasioned by stench and noise emanating *after* January 1981 from operation of the plant, or that if it did not, the Owens could have received compensation in the original proceeding. The defendant City concludes that in either instance the Owens are foreclosed *as a matter of law* by the doctrine of res judicata from recovering damages in the current proceeding.

The majority opinion falls into the trap of confusing res judicata as a *matter of law* with res judicata as a *question of fact* and erroneously makes a quantum leap from an insufficient record to its conclusion reversing the jury's verdict as a matter of law. In so doing the majority fails to view the evidence in the light most favorable to the plaintiffs and accord them the benefit of all reasonable inferences. *Boyle v. Colonial Life Ins. Co. of America,* 525 S.W.2d 811, 815 (Mo.App.1975). Instead they seize upon certain pieces of contrary evidence and gratuitously infer that the original award must necessarily have included some damages for smell and noise.[2] It then infers that this damage necessarily, as a matter of law, included the *excessive* and *unusual* odors and noise which finally occurred and became thereafter known to the Owens; or alternatively, that such excessive odor and noise level could have been anticipated and if damages therefor were not included, they should have been. By accepting this argument the majority heaps inference on inference and overlooks the record which belies the inferences so indulged. Simply put, the majority mistakenly relieves the City of the burden of proving its affirmative defense by the preponderance of the evidence. As the court so aptly stated in *Boyle:*

"The burden of proving the affirmative defense pleaded by defendant was upon defendant. * * * It is the established rule in this State that, where plaintiff has made out a prima facie case, it is beyond the power of the trial court to direct a verdict in favor of defendant where defendant has the burden of establishing an affirmative defense, *unless such defense is conclusively established by evidence which is conceded by plaintiff to be true, or is established by documentary evidence which is of such a character as to be binding upon plaintiff and thereby to estop him from denying it.*" [Emphasis in original.]

In reviewing the action of a trial court in ruling on defendant's motion for a directed verdict (whether ruled at the close of plaintiff's evidence or at the close of all the evidence, and whether sustained or overruled) the reviewing court must determine whether plaintiff

1. Although Homeowners claim is styled an action for "permanent nuisance" it is in the nature of and treated here as a claim for inverse condemnation. When a public body or corporation having the power of eminent domain commits an act or creates a permanent nuisance affecting land, the cause of action for damages to the land is determined by the law of eminent domain and a suit for such damages is by the demand for permanent damage converted to an action in the nature of condemnation.

2. At the outset, the City would have us believe the stench and noise are not excessive, and it goes without saying that was the position it adopted when making its presentation to the condemnation petitioners. Mr. Owen stated that a City employee had testified to the Commissioners that there would be no noise and no smell. The City obviously wanted the Commissioners to believe that assertion or conclude that any noise and stench would be minimal. While it may be conceded that the Commissioners' award perhaps included an amount for smell and noise, it cannot be said as a matter of law that the award contemplated the enormity of the noxious result later created near the Owens' home.

made a submissible case, and in so doing, the plaintiff is entitled to the most favorable view of all the evidence and must be given the benefit of all favorable inferences to be drawn therefrom.

*Id.* at 815 (citations omitted). The majority opinion evinces a convenient disregard of these precepts.

The petition in the condemnation proceeding provides little guidance concerning the extent of the rights sought by the City beyond the description of the land being taken, except as such as might be inferred from the use to which the land would be put. As set forth above, the petition sought in the barest terms to acquire fee title to the tract, described by metes and bounds, for the location of the lift station and force main. The Commissioners' report merely fixes the award at a dollar amount without specifying the damages contemplated. This is the only documentary evidence in the record bearing on the issue of res judicata, and it cannot fairly be said that it is of such a nature as to conclusively prevent or estop plaintiffs from denying or contesting the claim of res judicata. The majority opinion concludes that the petition and "construction plan" provided the Owens with sufficient notice that the lift station would produce the vile stench and excessive noise of which they now complain. However, the "construction plan" referred to by the majority is not part of the record here and we know neither of its terms nor its conditions. By law we are confined to consideration of the record presented and it is manifest error to rely upon evidence not contained in the record. *Williams v. Clean Coverall Supply Co., Inc.,* 613 S.W.2d 659, 664 (Mo.App. 1981). We have properly before us only the original petition, the order of taking and the Commissioners' report. Even if (contrary to the proper standard of review) the record is construed most *favorably to defendants,* it provides no basis for a determination that plaintiffs' claim is barred as a *matter of law* by the doctrine of res judicata.

The City next contends that the value of the land actually taken was only $3,000, according to Mr. Owen's testimony in the present proceeding, and urges that "any depreciation in land value caused by noises, odor and vibration ... would reasonably explain the Commissioners' decision to allow $22,651 for the 1½-acre parcel." While arguably the Commissioners may have considered the possibility of some odor and offensive noise, the likelihood that this would occur was reduced and minimized by a City employee who testified before the Commission that there would be no noise and no smell. *See* Note 2, *supra.* For us to blandly assert the extent to which such possibility might have been or was in fact considered by the Commissioners calls for speculation and guesswork in which we may not indulge. Putting aside for the moment the proper standard of review, an overly charitable construction of the award and consideration of inferences favorable to the City indicates only that the award may have contemplated some damage from noise and smell, but it cannot be said as a matter of law that the award included compensation for the unusually vile stench and excessive noise which eventuated.

Turning now to the closely related question of whether the Owens *might have* recovered in the condemnation action the damages they later sought in the permanent nuisance claim, I agree that if the damages for which the Owens now claim compensation were reasonably anticipated at the time of the original taking of their property for the lift station, they were obliged to seek them at that time and may not recover in the present proceeding. *Lemon v. Garden of Eden Drainage District,* 310 Mo. 171, 182, 275 S.W. 44, 47–48 (1925); *Lynch v. St. Louis, K.C. & C. Ry. Co.,* 180 Mo.App. 169, 168 S.W. 224–25 (1914); 27 Am.Jur.2d *Eminent Domain* Sec. 450 (1966). At that point all damages for value of property actually taken, as well as severance damages, i.e., consequential damages to plaintiffs' remaining property, are to be fixed as best they can be, *State ex rel. State Highway Commission v. Galeener,* 402 S.W.2d 336, 340 (Mo.1966), first by the Commissioners and next, upon the exceptions either of the landowner or

of the condemnor, by the jury. The Owens could have recovered damages for the noise and stench in the condemnation proceedings *if* such damages were reasonably anticipated at the time, *but not if they were merely possible, remote or speculative. Land Clearance for Redevelopment Corp. v. Doernhoefer,* 389 S.W.2d 780, 786 (Mo. 1965); *KAMO Electric Cooperative, Inc. v. Baker,* 365 Mo. 814, 287 S.W.2d 858, 862 (1956).

I believe it cannot be said, from a fair evaluation of the evidence supportive of the verdict and the trial court's ruling, that as a matter of law the unusual degree of stench and noise shown by the evidence in this case could have been reasonably anticipated at the time of the taking under the City's condemnation petition. The evidence in the present case on the antecedent probability of noise and stench from the operation of the lift station, although sparse, was telling. Mr. Owen testified, "[t]here wasn't to be no smell and no racket." He further stated that a representative of the City had testified before the Commissioners that there would be no smell and no noise. This affirmative evidence was for the jury to consider and indicates that in the condemnation proceeding it was made clear to these landowners and the Commissioners by those involved on behalf of the City that there would be no stench or "racket." This testimony alone was sufficient to make a submissible case. Moreover, the City made admissions through a key employee which indicated that the degree of noise and stench in this case could *not* have been reasonably anticipated at the time of the condemnation proceedings. Maintenance man John Phelan, Jr., who is involved in the operation of 20 lift stations for the City, testifying in the City's case in chief, was asked whether he had "ever been around sewage at a lift station that didn't have at least some smell." Phelan answered: "You've gotta be kidding. It stinks." Then this principal witness for the City admitted, "I'm gonna tell you that I think Mr. Owen's lift station, next door to him, *stinks worse than any one we got* with the exception of one other that pumps chemicals." (Emphasis added.) Phelan's

concession is noteworthy because it indicates that although he believes some smell is an unavoidable consequence of sewer plant operations, the lift station in question "stinks worse" than typical plants. This testimony, too, made the issue of what damages could be reasonably anticipated at the time of taking in early 1978 a question of fact for the jury, and this Court may not say that as a matter of law the unusually noxious stench and noise which occurred many years later were *necessarily* to be anticipated at the time of the original taking.

The City then takes the slightly different position, seemingly adopted by the majority, that because the odor and noise became apparent while the condemnation action was pending on the Owens' exceptions, they were obliged to seek their damages in the condemnation action, and having failed to do so they are now precluded from seeking them in this separate action for damages. The condemnation suit, however, determined the trespass on the day of taking. Those damages, as noted above, could not have included an unanticipated level of stench and excessive noise. The before-and-after value of the Owens' property was determined by the Commissioners four years prior to their claim seeking compensation for the extraordinary stench and noise which only arose after the facility went into operation. *See Newman v. City of El Dorado Springs,* 292 S.W.2d 314, 319, (Mo.App.1956); *Person v. City of Independence,* 114 S.W.2d 175, 179 (Mo.App. 1938).

In sum, because the plea of res judicata was not determinable from an inspection of the record alone it was not a question of law for the court. Instead, application of the doctrine here required extrinsic evidence and it became a question of fact for the jury. The Owens made a submissible case; and the City as a matter of trial strategy elected not to submit its affirmative defense to the jury. The issue was thereby waived and cannot be resurrected as the majority has blithely done. I believe the trial court properly denied the City's

motion for judgment notwithstanding the verdict.[3]

I would affirm.

---

3. On appeal the City raises other claims of trial error which were fully considered and found to be without merit by the Court of Appeals. My examination of those claims indicates they were properly denied and provide no basis for reversal.