**D. W. KNEPPER, Plaintiff-Respondent,**

v.

**Jim BOLLINGER and Fennel Brown, Defendants,**

**Fennel Brown, Defendant-Appellant.**

No. 32527.

St. Louis Court of Appeals.

Missouri.

Nov. 21, 1967.

Smith & Colson, David L. Colson, Farmington, for defendant-appellant.

Roberts & Roberts, Farmington, for plaintiff-respondent.

BRADY, Commissioner.

■ This appeal comes to the writer upon reassignment. It involves an action for damages resulting from fraud and deceit arising out of the sale of a 1964 Corvette Sports Coupe automobile. Plaintiff dismissed his cause of action against defendant Bollinger and we will hereafter refer to defendant Brown as "defendant". Plaintiff recovered judgment against defendant in the amount of $609.57. He appeals alleging there was insufficient evidence to warrant the giving of plaintiff's verdict directing instruction. In determining that issue we are required to view the evidence in the light most favorable to plaintiff at whose request the instruction was given and who received the jury's verdict. Lyons v. Taylor, Mo.App., 333 S.W.2d 346 [4].

In those parts pertinent to this appeal plaintiff's verdict directing instruction required the jury to find Bollinger, intending plaintiff to rely upon such representation, represented "the automobile was mechanically sound and that the factory warranty was good and would replace whatever was required to be replaced, * * *"; that these representations were false; Bollinger did not know whether they were true or false; the representation was material to the purchase by plaintiff; and that plaintiff relied upon the representation in making his purchase. See MAI 23.05.

The automobile here involved, a Chevrolet Corvette Sting Ray with a fuel injection engine, carried a factory warranty of two years or 24,000 miles. Defendant's son purchased the automobile new from a Chevro-let dealer in Washington, Mo. The transcript goes at length into what work was done on it and who did the work while defendant's son owned the automobile. However, in view of the submission made in the verdict directing instruction this material need not be included in this opinion. When defendant's son went into the service his father decided to sell the automobile and took it to one Bollinger, an automobile salesman in St. Francois County, Missouri, for that purpose. It was stipulated that Bollinger was defendant's agent and the case was tried upon the theory defendant was responsible for Bollinger's representation to plaintiff. At that time the automobile was approximately one year old and had been driven 14,000 and some odd miles. Bollinger had it in his possession for about six weeks before he sold it to the plaintiff and drove it during that time experiencing no trouble with it.

Plaintiff purchased this automobile and gave it to his son to drive while he was attending college in Columbia, Missouri. When plaintiff purchased it Bollinger testified he turned the factory warranty over to plaintiff and told him "the car was in good working condition" and "had nothing but genuine Chevrolet parts on it." The plaintiff's evidence as to what representation Bollinger made to him was as follows: "Q Mr. Knepper, did Mr. Bollinger say anything to you at the time you purchased the car other than there was a factory warranty on the car? A Nothing specific that I can repeat other than it's a fine, clean automobile. He said that the young man that owned it, his father had never allowed him to race it. Q He told you that the automobile warranty on the car had twenty-four thousand miles or twenty-four months, is that correct? A Yes. Right." This is the only evidence as to what representations were made.

While plaintiff's son was driving the automobile the transmission quit operating and this had to be repaired. He had the work done at Perry Chevrolet, an authorized dealer in Columbia, Missouri. This

work was covered by the warranty as was some other work not pertinent to this appeal. On the occasion of the trouble with the transmission plaintiff had written to the Company inquiring how he should proceed to get work done under the warranty. Their answer was that " * * * the car was to be checked by an authorized Chevrolet Dealer and if he felt that it was within warranty in all probability they would okay it. But they could not give any particular decision on any particular situation until they had been notified by the authorized dealer that work was to be done and that the owner felt that it should be under warranty. * * * Q Was there anything stated as to who would make the approval? A An authorized Chevrolet Dealer was, who was authorized by General Motors to make an approval of the work to be done."

About this same time plaintiff's son noticed water in the engine oil and he again returned the automobile to Perry Chevrolet to determine the trouble. The witness Smith, service manager for Perry Chevrolet, testified that on this occasion the automobile was "Leaking water coolant," and had a very noisy engine. Smith described what was done as follows: "A First, I took a cylindar leak test and found head gaskets leaking. In the removal of the heads, I found at that time some universal type headers that had been replaced or installed on the engine that were non-factory items. The engine cylindar heads had been off before, because they were non-Chevrolet head gaskets. One head gasket was leaking and the other one was swollen, so I replaced the head gaskets and took the car for a road test. And, when we got back, the car set approximately fifteen minutes and we noticed a drippage on the floor, so we raised it back up on the lift, at that time, to trace the engine noise, and saw the cylindar block cracked between No. 3 and 5 cylindar, on the left-hand side, right below where the cylindar head bolts on. * * *" It further appeared from his testimony that not only the universal headers but also a non-standard distributor

had been put upon the engine which was not of Chevrolet manufacture and a different type of spark plug wire had been installed. His opinion was that the purpose of these changes was to allow for higher revolutions per minute by the engine. The result was that he installed a new engine, the total bill coming to $609.57, and from that time on there was no trouble with the automobile. It appeared from the earlier testimony of defendant's son that the engine head had at one time been removed to allow some work to be done and then replaced. It further appeared that the entire engine had at one time been removed prior to the sale to plaintiff. It was Smith's opinion that the cracked engine block had been caused by an application of the wrong torque to the head bolts when the engine head had been put back on causing a distortion of the head resulting in undue stress on that particular part of the block with the resultant crack.

It was a part of his job responsibility to determine whether or not the warranty was applicable to various repairs done on automobiles brought into Perry Chevrolet. His decision was that the Chevrolet warranty would not apply to the $609.57 for the reason that the engine had been "highly over-revved" and abused. In reaching this decision he testified the most important thing was the "valve indentations in the top of the pistons" which indicated "highly over-revved r. p. m. valve flotation." He specifically stated he did not disqualify this work from coming under the warranty because of the non-Chevrolet parts nor because the motor had been removed from the automobile. He did testify there was no way you could tell when the engine had been over-revved or abused so as to cause the valve indentation and accordingly did not know whether it was done by plaintiff's son or someone else.

Smith's further testimony was that his decisions as to whether or not the work was to be covered by the warranty can be reversed by Chevrolet or General Motors and they have in fact done so in the past. He

did not know whether plaintiff or plaintiff's son had ever contacted the Company with reference to this work and to his knowledge the Company was never notified that the job was denied under the warranty. Due to that fact and because the Company had on occasion (his estimate was about 5% of the time) reversed his decision as to the warranty coverage, Smith's testimony was that he could not say whether Chevrolet would or would not have done this work under the warranty had they been notified.

The issue raised by defendant's allegation of prejudicial error does not require us to burden this opinion with a recitation of the well known elements of a case of fraud and deceit. Essentially it is one of proof. We digress momentarily to note this case was complicated by the fact the parties spent a great deal of time at the trial on the issue of whether or not this automobile had parts on it that were not genuine Chevrolet parts. However, in view of plaintiff's submission that issue is not before us as we are confined to determining whether or not there was proof to justify the submission of plaintiff's verdict directing instruction based upon representations to plaintiff the automobile was "mechanically sound and that the factory warranty was good and would replace whatever was required to be replaced, * * *."

■ We have determined there is evidence to support the giving of only one of the theories submitted in plaintiff's verdict directing instruction. With reference to the representation the automobile was "mechanically sound" Bollinger did testify that he told plaintiff "the car was in good working condition". We deem those statements to be essentially the same. Smith, service manager for Perry Chevrolet and plaintiff's witness, testified that in his opinion the cracked engine block had been caused by applying the wrong torque to the head blocks when the engine head had been put back on. There was evidence that while defendant owned it the engine head had been removed and reinstalled. From this the jury could find that the cracked engine block had resulted from activities which took place prior to plaintiff's purchase and thus there was evidence that the automobile in fact was not "mechanically sound".

Passing now to the evidence bearing upon the truth or falsity of the representation " * * * the factory warranty was good and would replace whatever was required to be replaced, * * * ", there is no doubt that the factory warranty was turned over to the plaintiff at the time he purchased this automobile. Neither is there any doubt but that due to the age of the automobile and the number of miles upon it the warranty was still in force. Plaintiff's own evidence showed clearly that some work had been done on this automobile under the warranty. The question is as to the extent of that warranty; i. e., whether an engine for which replacement was required due to abuse would be covered. The warranty is not in evidence but it is obvious from the transcript the parties tried this case upon the theory abuse would justify a denial of warranty coverage and we must review the case in that light.

■ It is elemental that plaintiff had the burden of proving the representation was false. To bear that burden in the instant case he had to prove the abuse took place prior to the plaintiff's purchase of the automobile. What was the evidence as to the abuse of this engine? The plaintiff's own witness testified that there was no way one could tell when the engine had been abused so as to cause the valve indentation he found. His testimony was that he could not tell whether it was done by plaintiff's son or someone else. The evidence in plaintiff's behalf in the instant case falls far short of sustaining his burden of proof. It follows that we are confronted with a situation where the plaintiff has submitted the case upon the theory there were two representations falsely made to him but his proof only supports the submission upon one of those representations; i. e., the automobile was mechanically sound.

Prior to the adoption of MAI failure of proof of one of two conjunctively joined submissions did not render the submission erroneous provided there was proof of the other. It was so held in fraud and deceit cases. See Pinger v. Guaranty Inv. Co., Mo.App., 307 S.W.2d 53 [7]. The situation is vastly. different since the adoption of MAI. MAI 1.02 states: "The practice of submitting dual or multiple theories of recovery or defense in the conjunctive is prohibited." Accordingly, plaintiff's submission in the instant case can no longer be excused upon the ground that one of the conjunctively joined submissions is in fact supported by the evidence. It follows the defendant's allegation of prejudicial error must be sustained. However, since the plaintiff did make a submissible case as to the other representation this case should not be reversed and is remanded for new trial upon all issues.

PER CURIAM:

The foregoing opinion by BRADY, C., is adopted as the opinion of the court. The case is remanded for new trial upon all issues.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.