Leon MANNING, et al., Respondents,

v.

ABC EXTERMINATORS,
INC., Appellant.

No. WD 35191.

Missouri Court of Appeals,
Western District.

Sept. 25, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Nov. 27, 1984.

Application to Transfer Denied Jan. 15, 1985.

Philip E. Nonnemaker, Kansas City, for appellant.

Justin J. Johl, Kansas City, for respondents.

Before KENNEDY, P.J., TURNAGE, C.J., and NUGENT, J.

KENNEDY, Presiding Judge.

Defendant appeals from a judgment based upon an adverse jury verdict for $11,000 actual damages and $5,000 punitive damages, based upon plaintiffs' claim of defendant's fraudulent misrepresentation of the extent of termite damage in a house plaintiffs had contracted to purchase.

We affirm the judgment.

The background facts are as follows:

Plaintiffs had contracted to purchase for $51,000 a house located at 3236 Windsor in Kansas City, Missouri. The contract provided for the seller to furnish to the buyer, prior to closing, an inspection report from a licensed termite control company with respect to termite infestation of the house. The contract provided that, should termite infestation be discovered, the seller would repair any termite damage up to $250. It provided further that the contract would be null and void if the necessary repairs exceeded $250 in cost and the seller and the buyer could not agree on payment for such repairs.

The real estate agent handling the sale of the property for the sellers contacted ABC Exterminators, Inc. ABC was a professional termite control firm. ABC inspected the property on February 21, 1980. Mrs. Manning, one of the buyers and plaintiffs, got an oral report (relayed by the real estate agent) of the results of the inspection. She called the ABC office on the telephone. She indicated a purpose to get a second opinion on the extent of the termite damage but was assured that it was not necessary. She was told, too, that ABC had treated the house for termites.

Mrs. Manning insisted upon having a written report of the termite inspection before closing. The report was handed to the

buyers by the real estate agent before the closing on the same morning. It read as follows:

February 26, 1980

TERMITE INSPECTION REPORT

Victor-Ross Realty
6618 Independence
Kansas City, Missouri 64125
 VA
 Re: 3236 Windsor
 Kansas City, MO 64123

Dear Sir:

Based on a careful visual inspection of accessible areas and on sounding of accessible structural members, there is no evidence of termite or other wood destroying insect infestation in the subject property, and, if such infestation previously existed, it has been corrected and any damage due to such infestation has also been corrected or alternatively has been fully disclosed as follows:

Evidence of termite infestation was found in partition, door casing and studs. In our opinion does not appear to be structurally damaged.

The residence has now been treated for the infestation with a one year guarantee against reinfestation.

 Very truly yours,
 A.B.C. Exterminators, Inc.

There seems to be no argument that all the parties understood that the "partition, door casing and studs" mentioned in the report referred to a basement coal bin. Mr. and Mrs. Manning intended to remove the coal bin so they were not concerned with damage to that structure.

They proceeded with the closing of the contract and in due time moved into the house. After living in the house about seven months, Mr. Manning was installing water and gas lines in the basement for a washer and dryer. He was unable to attach brackets to the ceiling because the screws kept falling out. He and Mrs. Manning, with flashlight and screwdriver, then discovered that a screwdriver would go through the wood of the subflooring. They then discovered mud tunnels and rotten and corroded wood in the subfloor and floor joists.

The trial evidence substantiated in fairly conclusive fashion that there was extensive termite damage, including structural damage, beyond the damage to the coal bin members as shown in the report. The damage was in accessible areas, unobstructed in any way. Mr. Micelli, a carpenter, who testified in the plaintiffs' behalf, said that the cost of repair of the visible damage would be $4,500 and more than that if more damage was revealed when the damaged subflooring and floor joists were removed.

There was evidence also that there had been no termite treatment done on February 26 or before, as represented in the report and as represented by the unidentified person with whom Mrs. Manning talked on the telephone at the ABC office. There was evidence that the treatment was done on February 28, the day after the February 27 closing.

The case was submitted to the jury upon an instruction which directed a verdict for the plaintiffs if they found that "defendant represented to plaintiffs that termite infestation was found only in the partition, door casing and studs at the residence and that the residence had been treated for infestation as of February 26, 1980"; defendant's intent that plaintiffs rely upon the representation; the representation's falsities; defendant's knowledge of the statement's falsity; the materiality of the representation; plaintiffs' reliance thereon; plaintiffs' ordinary care in relying upon the statement; and plaintiffs' damage. The instruction was patterned upon MAI 23.05.

The jury, as noted above, returned a verdict for plaintiffs against the defendant for $11,000 actual damages and $5,000 punitive damages.

 The operative elements of a fraud case are as follows:

It is plaintiffs' burden to establish each of the elements of fraud in order to recover. Those elements are: (1) a representation; (2) its falsity; (3) its materi-

ality; (4) the speaker's knowledge of its falsity or his ignorance of the truth; (5) the speaker's intent that his statement be acted upon; (6) the hearer's ignorance of the falsity of the statement; (7) his reliance on the truth of the statement; (8) the hearer's right to rely on the statement; and (9) the hearer's consequent and proximate injury.

*Weaver v. Travers,* 631 S.W.2d 81, 83 (Mo. App.1982), quoting *Cantrell v. Superior Loan Corp.,* 603 S.W.2d 627, 634 (Mo.App. 1980).

I

■ The sufficiency of the evidence to show the presence of the termite damage and the actual falsity of the ABC report are not challenged by ABC. It claims, though, that the evidence was insufficient to show that ABC made the misrepresentation "with intent to deceive", and that the evidence was insufficient to show that ABC "knew that the facts contained in the report were false".

Defendant cites *Weaver v. Travers,* supra, as a case "on all fours" within the present one. In *Weaver* it was held that plaintiff failed to show defendant's knowledge of the falsity of the representation and so failed to make a submissible case of fraud against the defendant. In the case before us, though, unlike *Weaver,* the ABC employee who actually made the inspection testified that he saw the evidence of termite infestation in the subfloors above the coal bin. He further testified that the infestation was such that the wood was soft enough that he could stick his probe into the wood. (Paradoxically, he testified "that there was infestation; no damage, just what I call infestation.")

We hold that the evidence was sufficient to submit to the jury the defendant's knowledge of the falsity of its termite inspection report.

II

■ Defendant then says that the evidence was insufficient to show that the representation was material to the plaintiffs, and that they relied upon the same in proceeding to close the sale. Under this head the defendant points to conduct of the plaintiffs which indicates, so defendants argue, that plaintiffs were actually unconcerned and indifferent to the presence of termite damage. First, defendant says that since the plaintiffs did not take advantage of the sales contract provision for the repair of the minor termite damage that was reported, plaintiffs were indifferent to the presence of termites and did not rely upon the report in proceeding to close the sale. That, anyway, is how we understand the argument. We are unable to follow defendant's reasoning. Mrs. Manning explained that they planned to remove the coal bin and cared nothing about having the damage to the coal bin structure repaired. We do not consider this failure to require the sellers to repair the damage described in the report to indicate that plaintiffs were indifferent to termite damage in general, no matter how extensive it was. Mrs. Manning testified that being informed about the extent of the termite infestation was a matter of importance to her, a statement which is borne out by her telephone call to ABC before closing, her proposal to get a second opinion when she learned there was some termite damage, and her insistence upon the written report before closing.

Defendant points to testimony of Mrs. Manning that she made no inquiry of the sellers or of the real estate agent about termite damage in her visits to the house before contracting to buy it. It points also to the testimony of Mr. Manning that he had been to the basement with one of the sellers, Mr. Brocato, who had pointed out the damage which was described in the ABC report. The damage pointed out to him was minor, Mr. Manning said. He did not look at the subfloor above. It was dark up there between the floor joists, he said, and he had no flashlight at the time. Mr. Manning's visit to the basement, it should be noted, was after the sale had been closed.

We do not agree with the defendant that any conduct of the plaintiffs indicated that termite damage to the house was immaterial to them. But if any of their conduct could be so interpreted, there was evidence also to show that the presence of termite damage was a material matter and that they relied upon the ABC report in proceeding to close the sale.

We hold that the evidence was entirely sufficient to show prima facie the materiality of the defendant's representation to the plaintiffs with respect to the extent of the termite damage, and that plaintiffs relied on the representation.

### III

Plaintiffs' verdict-directing instruction required a finding that "defendant represented to plaintiffs that termite infestation was found only in the partition, door casing and studs at the residence and that the residence had been treated for infestation as of February 26, 1980". Appellant says the evidence does not support the submission of the falsity of the second part of the representation, namely, that the residence had been treated for infestation as of February 26, 1980.

When Mrs. Manning spoke with the ABC office on February 26, according to her testimony, she was told that the property had already been treated. That representation was also contained in the February 26 written report which is copied earlier in the opinion. Defendant cites us to a case which holds that when two propositions are submitted to the jury in the conjunctive, there must be evidence to support both of them. *Knepper v. Bollinger*, 421 S.W.2d 796 (Mo.App.1967). The proposition is undeniable, but there was evidence that the house had not been treated on the 26th, and in fact was not treated till the 28th, the day after the closing. The fact that there was also evidence that it had been treated before the 26th does not render the fact insubmissible. It simply created a fact issue for the jury to decide.

We hold that the evidence supported the submission of the falsity of defendant's

representation of the extent of the termite infestation and the fact that the residence had been treated on February 26 or before.

### IV

Defendant further says that the use of the word "only" in that portion of the verdict-directing instruction quoted earlier in this opinion was argumentative, and gave "undue prominence to a particular fact". There is nothing to this contention.

### V

The defendant says the trial court erred in permitting Mr. Manning and Mrs. Manning to testify as to the difference in value between the house with the termite damage as represented by defendant in its report, and its value with its actual condition. Both of them testified that the value of the property with the minor damage described in defendant's report was $51,000, but that its actual value, considering the unreported termite damage, was $40,000. Defendant in his point on appeal complains of such testimony, not on the basis of their lack of expert qualifications to testify as to the value of the property, but

 for the reason: (a) the report by the
 defendant did not cover damage due to
 infestation which was not accessible by
 visual inspection or sounding of accessible structural members and such testimony of the plaintiffs included all damage
 whether seen or not and hence the opinions of the plaintiffs were improper and
 prejudicial, as to any element of damage
 sustained by plaintiffs.

No such objection was made at trial. At trial the only objection was to plaintiffs' qualifications as experts to express an opinion as to the value of the property. Defendant cannot attack the testimony here on a ground different from that on which he objected to the testimony in the trial court. *Walker v. Woolbright Motors, Inc.*, 591 S.W.2d 289, 291 (Mo.App.1979).

The point is disallowed.

### VI

Defendant complains of the damage instruction, which gave as the major dam-

ages "the difference between the actual value of the residence on the date it was sold to plaintiffs and what its value would have been on that date had the residence been as represented by defendant". It is patterned after MAI 4.03. Defendant's criticism of the instruction is that there was "no evidence which would indicate that the defendant had stated any representation concerning the value". Defendant does not develop this argument, and does not cite any authority to support its position. We are unable to see any merit in the point.

The point is disallowed.

### VII

Defendant complains of the punitive damage instruction as varying from MAI 10.01, which became effective January 1, 1983. The variations are inconsequential and could in no way have prejudiced defendant.

The point is disallowed.

Judgment affirmed.

All concur.